579 A.2d 1328

**Robert D. ZOLLARS, Appellant,**

v.

**Dolores A. ZOLLARS, Appellee.**

Superior Court of Pennsylvania.

Submitted June 5, 1990.

Filed Aug. 28, 1990.

Joseph P. Martone, Erie, for appellant.

Michael L. Carr, Erie, for appellee.

Before KELLY, HUDOCK and MONTGOMERY, JJ.

KELLY, Judge:

Robert D. Zollars appeals from an order distributing marital property. He specifically takes issue with the valuation of his pension and with the trial court's decision to award Dolores 60 percent of the marital property. We affirm the portion of the order granting Dolores 60 percent of the marital property and the valuation of his pension, but reverse as to the manner of distribution.

Robert and Dolores married in June 1959. Robert filed a complaint in divorce in June 1984 and moved from the marital home in November 1984. The parties' children are both emancipated and self-supporting.

Robert has been employed by the U.S. Postal Service since September 1959. His position pays approximately $29,000 annually with regular cost of living increases and

provides excellent medical coverage and a comfortable, vested retirement plan which matures in 1992.

Dolores was a homemaker since the birth of her first child in 1960 until April 1984. At that time she took a position in a small office with a salary of $15,700 a year but which provided no pension or health plan. Neither Dolores nor Robert are eligible for social security at this time.

After a hearing the master determined, and the trial court agreed, that Robert "has substantial economic advantages over Mrs. Zollars and that those advantages will continue." (Tr. Ct. Opinion at 11). Accordingly, the trial court awarded Dolores 60 percent of the marital property.

The marital property was composed primarily of the marital home and Robert's postal pension with only a few thousand dollars attributable to personal property and repayment of some small loan balances.

Exceptions were filed to the master's report and subsequently an appeal was filed prematurely on May 25, 1989 prior to entry of the decree of divorce. That appeal was quashed. The divorce decree was finally entered on November 13, 1989 under a bifurcated proceeding. Robert then filed this timely appeal on December 7, 1989.

The sole issues raised on appeal are:

A.  DID NOT THE COURT ERR IN VALUING APPELLANT'S PENSION?

B.  DID NOT THE COURT ERR IN AWARDING TO APPELLEE 60 PERCENT OF MARITAL PROPERTY?

(Appellant's brief at 6).

Prior to considering Robert's claims of error, we reiterate the applicable standard of review.

> In assessing the propriety of a marital property distribution scheme, our standard of review is whether the trial court, by misapplication of the law, or failure to follow proper legal procedure, abused its discretion. *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987); *Thomson v. Thomson*, 359 Pa.Super. 540, 519

A.2d 483 (1986); *Ganong v. Ganong,* 355 Pa.Super. 483, 513 A.2d 1024 (1986); *Sergi v. Sergi,* 351 Pa.Super. 588, 506 A.2d 928 (1986); *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). Moreover, "an abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Sergi, supra,* 351 Pa.Super. at 591, 506 A.2d at 930, *citing Braderman v. Braderman,* 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985). Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom, against the provisions of 23 P.S. § 401(d), and the avowed objectives of the Divorce Code, that is, to "effectuate economic justice between [the] parties ... and insure a fair and just determination of their property rights." 23 P.S. § 102(a)(6).

*Hutnik v. Hutnik,* 369 Pa.Super. 263, 266-7, 535 A.2d 151, 152 (1987); *Liciardello v. Liciardello,* 391 Pa.Super. 219, 570 A.2d 1062 (1990).

■ With this standard in mind, we first address Robert's dissatisfaction with Dolores' award of 60 percent of the marital property. We find no abuse of discretion in this award. Our review of the records and transcripts lead us to the same conclusion as that of the master and the trial court. Robert has far greater income, security and benefits available to him than any that may be available to Dolores presently or in the remainder of her working years. *Malseed v. Malseed,* 388 Pa.Super. 214, 565 A.2d 453 (1989). Accordingly, we find no abuse of discretion in the award.

■ Robert's remaining issue is more problematical. Any portion of Robert's pension attributable to the period from when he was hired through the time of separation is unquestionably marital property. *Liciardello v. Liciardello,* 391 Pa.Super. 219, 570 A.2d 1062 (1990); *Hunsinger v. Hunsinger,* 381 Pa.Super. 453, 554 A.2d 89 (1989); *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986); *Braderman v. Braderman,* 339 Pa.Super. 185, 488 A.2d 613 (1985). The problem here, as in many divorce

situations, is how the court is to divide assets that are, as yet, not in the physical possession or control of the parties.

The two primary methods of distribution utilized in this Commonwealth are the immediate offset and deferred distribution. Immediate offset, simply stated, involves reducing all marital property to a present value and then distributing the assets between the parties in accordance with the percentages determined by the court. This is only workable when such present value can be determined and when the assets are sufficient to allow for payments necessary between the parties. *Liciardello,* 570 A.2d at 1065; *Hutnik,* 535 A.2d at 154.

In the case before us the two largest marital assets are the marital residence with equity in the amount of $52,104 as of the hearing and Robert's pension plan. Robert has claimed that the present value of his pension as of separation was $54,825.60. Robert bases this on figures computed using the tables of the Pension Benefit Guarantee Corporation. These tables were designed for use when the employer or other pension guarantor has gone out of business, and no further growth is anticipated.[1] This is not the case with Robert's pension which continues to grow and which will be supplemented by regular cost of living increases. Growth of the marital contribution is marital property. *Hutnik v. Hutnik,* 369 Pa.Super. 263, 535 A.2d 151 (1987); *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986). The master and trial court both rejected the figure proposed by Robert in favor of the more reasonable amount proposed by appellee's expert of $176,-689. While the mathematical processes can be disputed, the common sense cannot.

Under the figure proposed by Robert, Dolores would receive 60 percent of the present value of $54,825 or $32,-895. Present value is the amount one would accept *now* to give up the right to a guaranteed stream of payments for

1. *See* N.T. 108–9; Troyan, "Pension Evaluation and Equitable Distribution," 10 Family Law Reporter No. 4, Monograph No. 1, Nov. 22, 1983.

an unknown period of time in the future.[2] In this case, Robert's retirement matures in 1992 and Dolores will then begin to receive payments of approximately $735.56 a month or roughly $8826.76 per annum [3] *plus* increases for cost of living twice yearly, which will continue until she dies. A fifty year old woman in good health with a long life ahead of her, no retirement plan and insufficient income to save would hardly choose to forgo the security of a life-long income, for a comparatively small lump sum distribution of $32,895 that is only the equivalent of less than four years' retirement benefits at *present* rates. We find the trial court's decision to accept the present value of the expert pension appraiser to be fair and reasonable.

Having determined the present value of the pension, Dolores' share would amount to $106,013.[4] It is clear that there are not sufficient marital assets for that amount of money to be paid to Dolores even subtracting the amount of the equity in the house which is due to Robert.[5]

On the other hand, Dolores, who has solely owned the marital residence since 1985, does not have the funds to pay Robert at this time for his share in the equity in the home. The trial court attempted to deal with this dilemma without forcing the sale of Dolores' home by computing a formula which would reduce Dolores' pension entitlement to accommodate Robert's equity entitlement. The problem with the formula is that it combined a deferred distribution with an offset based on present value figures of the gross amount of all marital assets.[6] This was attempted previous-

2. Skoloff, "How to Evaluate and Distribute Employee Benefits in a Divorce." *The National Law Journal,* at 25 (February 13, 1984).

3. Based on $1,556 × $^{26}/_{33}$ = $1225.93 × .60 = $735.56

4. $176,689 × .60 = $106,013.

5. $52,103.96 × .40 = $20,842.

6.

| Years of marriage at separation (26) | × | Dolores' pension share less Robert's equity share |
|---|---|---|
| years of service (33) | | present value of all marital property |

ly in *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984), and found to be inappropriate. Additionally, the reduction of the pension payment was to continue permanently—possibly long past the time when Robert will be fully compensated for his equity share. Accordingly, we reverse the order of equitable distribution so far as the formula used.

We are in agreement that a deferred distribution of the pension is in the best interest of both parties—it provides old age security for both Robert and Dolores and does not require Robert make payment of a large sum of money that it would seem difficult or even impossible for him to acquire. Also, the computation of a present value of the pension is purely conjecture, as all the future increases cannot be known at this time. The cases do not mandate, however, that *each* item of marital property be distributed in the same way or paid in the same way or at the same time. The equity in the house is actually known and undisputed. The court could easily order that Dolores pay Robert his equity share at some time in the future in installments when her income increases, such as when she begins to receive her share of the pension in 1992, independent of her receipts from his pension. *Liciardello v. Liciardello,* 391 Pa.Super. 219, 570 A.2d 1062 (1990). This would solve the problem without creating hardship on either Robert or Dolores in the interim as it would merely maintain their current situations until the funds become available and assures that Dolores pays no more than the equity in the house to Robert.

This alternate payment plan could be accomplished in several ways. Dolores could be required to take out a mortgage in the amount owed Robert. This would have the advantages of allowing Robert to receive a lump sum payment *and* requiring no further court supervision or involvement. If for any reason Dolores could not secure a

$$\times \text{ monthly pension or } {}^{26}\!/_{33} \times \frac{82,482.01}{176,689.00} \times \text{ gross monthly pension}$$

mortgage thru conventional sources, Robert could, in effect, become a mortgagee with Dolores making the appropriate interest and principal payments to him. A third option might be yearly payments on the principal for 5 years with interest computed on the unpaid balance. The court might even consider a slight reduction in the percentage of the pension awarded Dolores based on a future value determination of the money due Robert. This, though, would be the least desirable method for the same reasons that a present value distribution of the pension is undesirable. The peculiar circumstances of each case will determine the best means of making these distributions when the parties are without present means. We agree with the master and the trial court that Dolores need not lose her home when the means to pay Robert his equity share will be available within the foreseeable future. The trial court, within the few limits of the case law in this area, is free to be both flexible and creative in establishing an equitable payment plan now or may maintain jurisdiction until the pension begins to determine the amount, duration, and manner of the payments to Robert.

Accordingly, we remand the case to the trial court for final determination of the manner in which Robert is to be paid. The pension shall remain under the deferred distribution, as ordered, without the offset for the home equity.

Based on the foregoing, the order of the trial court is reversed and the case is remanded for action in accordance with this decision. Jurisdiction is relinquished.