598 A.2d 31

**Charles L. BERRINGTON, Appellant,**

v.

**Claire L. BERRINGTON, Appellee.**

Superior Court of Pennsylvania.

Argued March 19, 1991.

Filed Sept. 9, 1991.

Reargument Denied Nov. 4, 1991.

358

Patricia G. Miller, Pittsburgh, for appellant.

Richard R. Isaacson, Pittsburgh, for appellee.

Before ROWLEY, President Judge, and WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

In this divorce action, the trial court, in making distribution of an employed spouse's interest in a defined benefit pension plan according to the deferred distribution method, ordered payment based upon the value of the pension at a future date on which the payment of pension benefits will commence. The employee spouse argues on appeal that in this manner the trial court has distributed assets which, because they will be acquired following separation, are non-marital. We agree and reverse.

Charles and Claire Berrington were married on May 7, 1955. They separated on July 15, 1984. At all relevant times, Charles was an employee of Westinghouse Electric Corporation. He started in Westinghouse's employ on February 22, 1955 and continues such employment at the present time. As a Westinghouse employee, he has participated in the company's pension plan since the commence-

ment of his employment. Charles will become sixty-five on June 21, 1997, and his anticipated retirement date is the first day of the month thereafter.

■ The Westinghouse pension plan is a defined benefit plan [1] and consists of a basic portion and a supplemental portion. All Westinghouse employees are eligible to participate in the basic portion; however, only those persons who were salaried employees on or before August 1, 1985 are eligible to participate in the supplemental portion of the Westinghouse pension plan. Appellant-husband participates in both the basic and supplemental portions of the Westinghouse pension plan.

An employee has the option of contributing to his or her retirement plan. Under the supplemental plan, if the employee makes no contributions, the employer also makes none. Appellant-husband's retirement plan is contributory. Between the date of separation and February 28, 1990, he contributed the sum of $14,770.16 to the basic and supplemental portions of the plan.

Westinghouse also provided and husband participated in an excess benefit program known as the executive benefit plan. This plan was available only to employees occupying an executive position for at least five continuous years preceding retirement. The pension benefit per month is determined by multiplying the pensioner's average total compensation by an executive pension multiplier. The employee's average total compensation equals the sum of his or her average monthly salary and average monthly incentive compensation for the highest five months' salaries for each year of the ten years immediately preceding retirement. The executive pension multiplier equals the employee's years of service at retirement multiplied by 1.47%.

1. A defined benefit plan is a promise to pay in the future an amount which will be calculated in the future by use of a set formula defined in the pension plan provisions. The employer pays a specified amount of benefits at retirement. Contributions to the plan are based on the amount needed to provide the projected benefit. Tax Management Portfolio. *Pension Plans—Qualification,* Vol. 351, p. A–2 (1990).

Charles Berrington filed a complaint for divorce on January 9, 1985, and a decree was entered on July 27, 1987. The court retained jurisdiction over the parties' remaining claims for equitable distribution of marital property, alimony and counsel fees. A settlement agreement regarding the remaining claims was subsequently reached and was entered as an approved order of court on September 28, 1988. Pursuant thereto, appellee-wife was to receive non-modifiable alimony in the amount of fifteen hundred ($1500.00) dollars per month until the first of the following occurrences: (1) wife's cohabitation or remarriage; (2) husband's attaining age 65; (3) husband's permanent retirement from Westinghouse at age 62, 63, or 64, should he elect to do so; or (4) the death of either party. The wife-appellee was awarded sixty (60%) percent of marital property, and husband-appellant received forty (40%) percent. The marital portion of husband's pension was divided in the same way, and counsel were directed to prepare orders effecting a distribution of pension benefits.

The Westinghouse pension plan is a qualified plan under the Retirement Equity Act of 1984. The executive plan, however, is not a qualified plan. Therefore, the parties submitted two proposed orders: a Qualified Domestic Relations Order (QDRO) pertaining to the Westinghouse pension plan and a Domestic Relations Order pertaining to the Executive Pension Plan. The orders proposed by appellant-husband calculated his pension benefit by using his annual salary on the date of separation. The order proposed by wife-appellee calculated the amount of the pension benefit as of the deferred date.[2] The trial court entered an order based on wife's calculations. Husband appealed.[3] He ar-

2. The deferred date, known as the benefit determination date, is the earliest to occur of: (1) the employee-spouse's separation from service; (2) the employee-spouse's death; or (3) the date the non-employee-spouse begins receiving her portion of the benefit awarded to her. The benefit determination date is different in each case and the possible times at which the benefit determination may occur is set out by the court in the QDRO.

3. The court's order purports to be in all respects a final order. Therefore, appellant's right of appeal is not defeated by his failure to

gues that the court's order has erroneously treated significant post-separation contributions to the plan as marital property.

■ Our scope of review in equitable distribution matters is limited. Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be reversed absent an error of law or abuse of discretion. *Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983). See also: *Lyons v. Lyons*, 401 Pa.Super. 271, 276, 585 A.2d 42, 45 (1991); *Miller v. Miller*, 395 Pa.Super. 255, 259, 577 A.2d 205, 207 (1990), *allocatur denied*, 525 Pa. 664, 583 A.2d 794 (1990); *Hunsinger v. Hunsinger*, 381 Pa.Super. 453, 459, 554 A.2d 89, 92 (1989); *Hutnik v. Hutnik*, 369 Pa.Super. 263, 266, 535 A.2d 151, 152 (1987); *LaBuda v. LaBuda*, 349 Pa.Super. 524, 528, 503 A.2d 971, 974 (1986), *allocatur denied*, 514 Pa. 648, 524 A.2d 494 (1987); *Braderman v. Braderman*, 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985). An abuse of discretion "is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of [the] opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment— one that is clearly against logic and [the] effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law." *Myers v. Myers*, 405 Pa.Super. 290, 592 A.2d 339 (1991), citing *Commonwealth v. Powell*, 527 Pa. 288 n. 8, 590 A.2d 1240 n. 8 (1991), quoting Black's Law Dictionary, 5th Ed. (1979).

file exceptions. See: *Storti v. Minnesota Mutual Life Ins. Co.*, 331 Pa.Super. 26, 28–29, 479 A.2d 1061, 1062 (1984). See also: *Commonwealth v. Derry Township*, 466 Pa. 31, 41–42, 351 A.2d 606, 611 (1976); *Barton v. Penco*, 292 Pa.Super. 202, 204, 436 A.2d 1222, 1223 (1981); *Greenwood Township v. KEFO, Inc.*, 52 Commw.Ct. 367, 370, 416 A.2d 583, 584–585 (1980).

■ It is now firmly established in Pennsylvania that retirement pension benefits, vested and non-vested, military and civilian, are marital property subject to equitable distribution. *Verdile v. Verdile,* 370 Pa.Super. 475, 485, 536 A.2d 1364, 1369 (1988). See also: *Vaughn v. Vaughn,* 370 Pa.Super. 333, 536 A.2d 431 (1988); *Major v. Major,* 359 Pa.Super. 344, 518 A.2d 1267 (1986); *Barnhart v. Barnhart,* 343 Pa.Super. 234, 494 A.2d 443 (1985); *Flynn v. Flynn,* 341 Pa.Super. 76, 491 A.2d 156 (1985); *Braderman v. Braderman, supra; King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). Where the employee "benefits result from employment during the marriage, they are marital property since the benefits are received in lieu of higher compensation which would have enhanced the marital assets or the marital standard of living." *Braderman v. Braderman, supra,* 339 Pa.Superior Ct. at 195–196, 488 A.2d at 618. The policy for this holding was stated in *Flynn v. Flynn, supra,* as follows: "Since a pension benefit is an economic resource acquired with funds that would otherwise have been utilized by the parties during their marriage to purchase other assets, it constitutes marital property." *Id.,* 341 Pa.Superior Ct. at 83, 491 A.2d at 160.

■ There are two basic approaches to distributing the marital property portion of an employee-spouse's pension. The first is the immediate offset method, and the second is the deferred distribution method. The immediate offset method distributes the present value of the pension benefits at the time when distribution is made. In this manner, the non-employee spouse receives an immediate distribution of marital assets in order to provide him or her with an equitable share of the pension even though the pension itself will not actually be received by the employee-spouse until some time in the future. See: *Lyons v. Lyons, supra,* 401 Pa.Superior Ct. at 278–281, 585 A.2d at 46–47; *Lowry v. Lowry,* 375 Pa.Super. 382, 402, 544 A.2d 972, 982 (1988); *Braderman v. Braderman, supra,* 339 Pa.Superior Ct. at 197, 488 A.2d at 619. The present value is the estimate of the present worth to the employee-spouse of these future

benefits. See: *Zollars v. Zollars*, 397 Pa.Super. 204, 209–210, 579 A.2d 1328, 1330 (1990), *allocatur denied*, 527 Pa. 603, 589 A.2d 693 (1991).

In the immediate offset method, we begin by calculating the amount of the monthly pension benefit, assuming that the employee was at retirement age with a fully vested[4] pension based upon compensation and plan provisions as of the date of separation. We then determine the value of the monthly benefit the employee-spouse will receive at retirement. This is computed according to the life expectancy of the employee-spouse and an appropriate interest rate. Because of the present distribution under the immediate offset method, it is then necessary to calculate the present value of the employee-spouse's pension benefits. After reducing the value of the benefits by accounting for interest rates and other contingencies, such as death, the calculation yields an actual present value of the employee-spouse's benefits payable at age 65. See: *Lowry v. Lowry, supra*, 375 Pa.Superior Ct. at 402–403, 544 A.2d at 982–983; *DeMasi v. DeMasi*, 366 Pa.Super. 19, 50, 530 A.2d 871, 886 (1987), *allocatur denied*, 517 Pa. 631, 539 A.2d 811 (1988). It is then necessary to calculate the portion of the present value which was earned during the marriage. The present value is multiplied by the "coverture fraction" to equal the present value of the entitlement which was acquired during the marriage. The numerator of the fraction equals the total period of time the employee-spouse participated in the plan from the date of marriage until the date of separation. The denominator equals the total period of time the employee-spouse participated in the pension benefits program. See: *Lyons v. Lyons, supra*, 401 Pa.Superior Ct. at 280, 585 A.2d at 47; *DeMasi v. DeMasi, supra* at 50, 530 A.2d at 886; *Braderman v. Braderman, supra*, 339 Pa.Superior Ct. at 198, 488 A.2d at 619; *King v. King, supra*, 332

---

4. A vesting schedule in the provisions of the employer's pension program specifies the percentage of a participant's benefit which is nonforfeitable at a given point in time. See: Troyan, *Pension Evaluation and Equitable Distribution*, 10 FAM.L.REP. (BNA) 3001 (1983). See also: Tax Management Portfolio. *Pension Plans—Qualification, supra* at A–22. Charles Berrington became fully vested under the Westinghouse Pension Plan (basic and supplemental portions) when he completed ten (10) years of service.

Pa.Superior Ct. at 533, 481 A.2d at 916. After determining the non-employee-spouse's interest in the employee-spouse's pension benefits, the total of the non-employee-spouse's award is offset by distributing other marital property or by ordering payment to the non-employee-spouse.

The second method of distributing the marital property portion of the employee-spouse's pension, the deferred distribution method, requires the trial court to retain jurisdiction and distribute the pension benefits as of the benefit determination date. Under this method, present value figures are not used. Rather, the coverture fraction is multiplied by the value of the employee-spouse's pension benefits on the benefit determination date. See: *Lyons v. Lyons, supra,* 401 Pa.Superior Ct. at 280, 585 A.2d at 47; *Hunsinger v. Hunsinger, supra,* 381 Pa.Superior Ct. at 461, 554 A.2d at 93; *Braderman v. Braderman, supra,* 339 Pa.Superior Ct. at 198, 488 A.2d at 619; *King v. King, supra* at 534, 481 A.2d at 917.

The immediate offset method, because it effectuates an immediate and final distribution of retirement benefits, has the advantage of avoiding continued hostility between the parties. *Lyons v. Lyons, supra,* 401 Pa.Superior Ct. at 278, 585 A.2d at 46; *Braderman v. Braderman, supra,* 339 Pa.Superior Ct. at 198, 488 A.2d at 620. On the other hand, there are instances in which the deferred distribution method is clearly the preferable, sometimes the essential, way of proceeding. Deferred distribution is the preferred method of equitably valuing and distributing "unvested" retirement benefits which may never actually be received by the employee-spouse because of the possibility of death or termination of employment before vesting. To insure that the employee-spouse will not be forced to distribute a portion of the marital estate to offset an award of a pension which may never vest, the non-employee-spouse is given an equitable share of the pension benefits only after they become nonforfeitable to the employee-spouse. In such cases, the deferred distribution method divides equally the risk of forfeiture between the parties. Deferred distribution is also preferred when the parties' other marital assets are

insufficient to offset an award of a share of the marital property portion of the pension to the non-employee-spouse. *DeMasi v. DeMasi, supra,* 366 Pa.Superior Ct. at 49, 530 A.2d at 886. See also: *Lyons v. Lyons, supra,* 401 Pa.Superior Ct. at 280, 585 A.2d at 47; *Zollars v. Zollars, supra,* 397 Pa.Superior Ct. at 209, 579 A.2d at 1330; *Hutnik v. Hutnik, supra,* 369 Pa.Superior Ct. at 270, 535 A.2d at 154. "When the value of the employee-spouse's pension far exceeds the value of the other marital property, the deferred distribution method must be used." *Braderman v. Braderman, supra,* 339 Pa.Superior Ct. at 199, 488 A.2d at 620.

The trial court must weigh the advantages and disadvantages of each method of distribution according to the facts of each case in order to determine which method best effects economic justice between the parties. In the instant case, the appellant does not dispute the trial court's choice of the deferred distribution method.[5] Rather, the argument is that inherent in the use of the deferred method of pension evaluation and distribution is a factoring of pension benefits which have accrued after the date of separation and, indeed, benefits which will continue to accrue after the parties have been divorced. Appellant argues that while the benefit distribution may be deferred, the value of the pension must be determined as of the date of separation rather than on the benefit determination date. It is his contention that, under the deferred distribution method, the date of separation should be treated as the date of retirement, just as in the immediate offset method, for purposes of equitably distributing the marital property portion of the employee-spouse's pension benefits which has accrued from the date of marriage to the date of separation. To include benefits accruing after the date of separation, he argues, is to effect a distribution of property which is non-marital.

5. We note also that the appellant has not challenged the trial court's designation of the numerator and denominator of the coverture fraction. As in *Lyons v. Lyons, supra,* we recognize the imprecision in cases filed in this Commonwealth concerning the coverture fraction. We adhere to the definition that the denominator of the coverture fraction equals the total period of time the employee-spouse participated in the pension benefit plan.

The terms of the Divorce Code define marital property as all property acquired during the marriage with certain exceptions. This is set forth in Section 401(e) of the Divorce Code of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 401(e), as amended, 1988, February 12, P.L. 66, No. 13, effective immediately, as follows:

(e) For purposes of this chapter only, **"marital property"** means *all property acquired by either party during the marriage,* including the increase in value prior to the date of final separation, of any nonmarital property acquired pursuant to paragraphs (1) and (3), except:

(1) Property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage.

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, except between spouses; bequest; devise; or descent.

(4) *Property acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets.*

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the date of final separation.

(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85–857, 72 Statute 1229, as amended, except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the date of final separation.

(8) Any payment received as a result of an award or settlement for any cause of action or claim which accrued prior to the marriage or after the date of final separation regardless of when the payment was received.

(emphasis added).[6] The intent of the Legislature was not to include as marital property any property acquired after separation. See: *King v. King, supra,* 332 Pa.Superior Ct. at 531, 481 A.2d at 915.

■ As a general rule, "[o]nly that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code." *Braderman v. Braderman, supra,* 339 Pa.Superior Ct. at 196, 488 A.2d at 618. See also: *King v. King, supra.* However, in *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986), the Court created an exception where a plan had vested and value had increased, aside from contributions made by the employer and employee, after the date of separation. *Id.,* 357 Pa.Superior Ct. at 344–345, 516 A.2d at 12–13. In such case, the Court held, the increase in value after the date of separation, which is not attributed to additional contributions, is marital property. See: *Zollars v. Zollars, supra,* 397 Pa.Superior Ct. at 209, 579 A.2d at 1331 (growth of the marital contribution is marital property); *Liciardello v. Liciardello,* 391 Pa.Super. 219, 224–225, 570 A.2d 1062, 1064 (1990); *Hutnik v. Hutnik, supra,* 369 Pa.Superior Ct. at 269, 535 A.2d at 153–154. In *Liciardello, supra,* the Court upheld a valuation of the marital property portion of husband's pension on a date subsequent to the date of separation in order to allow for an increase in value of the vested marital property portion of the pension. This, however, did not involve subsequent contributions to the pension made by the employee-spouse.

■ As in all cases concerning the valuation of marital property, "[i]t is implicit ... in the statutory provisions governing equitable distribution that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized." *Sutliff v. Sutliff,* 518 Pa. 378, 381, 543 A.2d 534, 536 (1988). See also: *Downey v. Downey,* 399 Pa.Super. 437, 450–451, 582 A.2d 674, 681 (1990); *Malseed v. Malseed,* 388 Pa.Super. 214, 218, 565 A.2d 453, 455 (1989);

6. The Divorce Code was codified on December 19, 1990, effective in 90 days. Section 401(e) now appears at 23 Pa.C.S. § 3501(a).

*Gioia v. Gioia,* 382 Pa.Super. 538, 542–543, 555 A.2d 1330, 1333 (1989). Value is by no means a constant; and, therefore, the fluctuation in value of marital assets from the date of separation to the date of distribution shall be calculated as part of the value of a marital asset. In determining that which is and that which is not marital property, however, it is the date of separation which is controlling.

■ Thus, pension benefits purchased with assets earned by a spouse following separation are not marital property. Consistent with the language of 23 P.S. § 401(e), recently codified at 23 Pa.C.S. § 3501(a), "the degree to which the employee accrues additional benefits after separation, these additional benefits are property acquired after separation and not marital [property]." *Lowry v. Lowry, supra,* 375 Pa.Superior Ct. at 404 n. 7, 544 A.2d at 983 n. 7. It follows that the only time span which is relevant for equitable distribution purposes is the total period of time the employee-spouse contributed to the pension program from the date of marriage until the date of separation. Contributions made outside this period entail the purchase of benefits with funds not available to the parties during their marriage.

The decision in *Morschhauser, supra,* does not require a different result. It does not require the inclusion of contributions made by employer or employee after separation for the purpose of evaluating pension rights on the date of separation. Indeed, the opinion in *Morschhauser* specifically acknowledges that contributions made following separation do not serve to increase the marital portion of the employee-spouse's pension. It is only the appreciation in value of the marital portion of a pension fund which can be added to the value of the pension on the date of separation in making distribution.

The trial court in the instant case has acknowledged that by its calculation of the deferred distribution of the pension fund the non-employee spouse has benefitted by participating (1) in pension benefits purchased with earnings of the employee-spouse following separation; and (2) in a pension fund larger than that which would have been distributable

under the immediate offset method. The trial court based its decision on "moral" grounds. Its decision, however, is contrary to the express language of the statute which authorizes a divorce court to distribute only property acquired prior to separation.

■ It is incorrect to apply "moral" grounds in order to determine that which constitutes marital property. Marital property has been defined by statute. Sacrifices made by a non-employee spouse during the early years of a marriage can be factored into a court's order distributing marital assets pursuant to Section 401(d) of the Divorce Code.[7] However, it cannot be substituted for the statute's unambiguous definition of that which constitutes marital property. Marital property means all property acquired during the marriage, with certain exceptions. See: Divorce Code,

7. This section of the Divorce Code, recently codified at 23 Pa.C.S. § 3502(a), requires a court to make distribution in accordance with the following mandate:

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.

(11) Whether the party will be serving as the custodian of any dependent minor children.

*supra,* § 401(e). It does not include "[p]roperty acquired after final separation until the date of divorce." Divorce Code, *supra,* § 401(e)(4). It does not include pension benefits purchased with contributions made after separation.[8]

■ Here the trial court considered the factors recited in Section 401(d) of the Divorce Code in determining that the wife should receive sixty (60%) percent of the marital property. This was entirely correct. However, it was improper to consider the same factors in determining what constituted marital property.

In construing Pennsylvania's Divorce Code, we must follow the Pennsylvania legislature's scheme which separates the factors for defining marital property from the factors for distributing marital property. Time of acquisition is the factor that the legislature mandates the courts use in determining whether property is a marital asset. *See* 23 P.S. § 401(e)–(f). In contrast, a list of ten factors found in subsection 401(d) of the statute are considerations that the legislature mandates courts use in determining distribution of marital property. Those ten factors relate to the personal and economic circumstances of the parties and the parties' contributions in bringing about an increase or decrease in the value of the marital assets. 23 P.S. § 401(d)(1)–(10). In other words, under the statute the court first determines what is marital property based upon the time of acquisition and then determines the equitable distribution of that property taking into account the factors in subsection 401(d).

Subsection 401(d) concerns the fair apportionment of marital property between the parties following a divorce, not the designation of assets as marital or nonmarital property. Once the parties' property has been earmarked as either marital or nonmarital property according to the time of its acquisition and the subsection 401(e) exceptions, *see* 23 P.S. § 401(e)–(f), then the court may, in

8. The pension being distributed in *Holland v. Holland,* 403 Pa.Super. 116, 588 A.2d 58 (1991) was a non-contributing plan maintained by the federal government.

conformity with subsection 401(d) of the Code, equitably divide and distribute the parties' marital property after due regard for all relevant factors among which are those listed in subsection 401(d) such as the "contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker." 23 P.S. § 401(d)(7). In *Platek v. Platek*, 309 Pa.Super. 16, 454 A.2d 1059 (1982), we noted that factors such as the parties' efforts or contributions toward procurement, preservation or enhancement of property are appropriately considered for purposes of equitable division and distribution of marital property under subsection 401(d) of the Code.

*Anthony v. Anthony*, 355 Pa.Super. 589, 594–595, 514 A.2d 91, 93–94 (1986).[9]

We have observed that the policy reasons for a court choosing the deferred distribution method over the immediate offset method of distribution are because either the employee-spouse's pension plan has not vested or because there are insufficient marital assets to pay an award of the present value of the marital property portion of the pension to the non-employee-spouse. None of these policy reasons legitimize an award to the non-employee-spouse which is greater because the deferred distribution method was used in preference to the immediate offset method. To permit the distribution of a larger pension under the deferred distribution method than under the immediate offset method is not sanctioned by any provision of the Divorce Code. For a court to sanction it is to encourage an employee-spouse to terminate his or her employment at or shortly after separation in favor of a new position with a different employer who has a different pension plan.

In *LaBuda v. LaBuda*, *supra*, the Court was unwilling to disturb the trial court's deferred distribution of the employee-spouse's pension where the employee spouse

9. 23 P.S. § 401(e)–(f) has been codified at 23 Pa.C.S. § 3501(a) and (b).

merely asserted the error of the trial court in failing to consider that his earnings were at their highest level in the period following the parties' separation. The Court stated that no abuse of discretion could be found by the trial court by following the deferred distribution method where at no stage in the proceedings had the appellant-pensioner offered an alternative formula for determining the portion of the pension which was marital property. *Id.,* 349 Pa.Superior Ct. at 536, 503 A.2d at 977–978. The appellant in the instant case has proposed a proper alternative which would equalize the disparate result under the two methods of pension benefit distribution. It is appellant's proposal that the disparate result of the two alternate methods of pension benefit distribution be equalized by determining the employee spouse's pension benefit value as of the benefit determination date, after the vesting of the pension, based solely on the employee-spouse's salary on the date of marital separation. Under this method, when the pension value is multiplied by the coverture fraction it will yield only those pension benefits which accrued from the date of marriage to the date of separation. Because the Court has selected a deferred date of distribution, however, it is necessary to account for the fluctuation which may have occurred in the value of the pension between the date of separation and the date of valuation. If, as of the deferred date, the value of the marital property portion of the pension has increased, aside from contributions of the employee or employer, this increase is also marital property to be added to the value of the pension after application of the coverture fraction. See: *Morschhauser v. Morschhauser, supra.*

The marital property calculation must yield the same pension under either method of distribution. If a court believes that a non-employee-spouse is entitled to a greater share of the marital property portion of the employee-spouse's pension due to the marital efforts of the non-employee-spouse or an extended time during which the spouse must wait to acquire his or her share of the marital property portion of the employee-spouse's pension, these

factors may be weighed in determining the equitable division of the marital property pursuant to Section 401(d) of the Divorce Code. They may not be utilized, however, to make marital property out of assets acquired after separation. Where an employee-spouse's pension is not vested and it is uncertain if it will vest before termination of employment or death of the employee-spouse or where the other marital assets are insufficient to offset an immediate award of an equitable share of the marital property portion of the pension to the non-employee-spouse, it will best effectuate economic justice between the parties to defer the distribution of the marital property portion of the employee-spouse's pension until the benefit determination date. In such cases, however, we seek to achieve only a deferred distribution, not an increased benefit to the non-employee spouse.

It is argued by appellee that application of the coverture fraction alone equalizes the disparate result inherent in the two alternate methods of determining pension benefit value and distribution. This reasoning is mathematically unsound, for the same coverture fraction is used under either the immediate offset or deferred distribution method. If appellee's argument is accepted, however, the coverture fraction will be multiplied by an inordinately larger pension value under deferred distribution than under the immediate offset method.

We conclude, therefore, that the trial court's distribution of the full pension benefits available upon appellant's retirement, much of which was purchased with contributions made following separation, was erroneous. Only those pension benefits available on the date of separation are marital property.

Reversed and remanded for the entry of an order consistent with the foregoing opinion. Jurisdiction is not retained.