J-A15005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ALBERT GRANVILLE, II | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HOLLY K. GRANVILLE | |
| Appellant | No. 10 MDA 2017 |

Appeal from the Order Entered December 2, 2016
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2013-FC-41196

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:          **FILED AUGUST 18, 2017**

Holly K. Granville ("Wife") appeals from the December 2, 2016 order entered in the Lackawanna County Court of Common Pleas overruling her exceptions to the master's recommendations and decreeing her divorced from Albert Granville, II ("Husband").  We affirm.

The parties married in 1996 and separated in 2012.  On August 27, 2013, Husband filed a complaint in divorce.  On November 25, 2015, the parties participated in a hearing in front of Master David J. Ratchford, Esq.  On January 29, 2016, the Master filed recommendations and findings in divorce ("Master's Recommendations").  On February 19, 2016, Wife filed exceptions to the Master's Recommendations, which the trial court overruled in an opinion and order dated October 20, 2016.  Wife timely filed a notice of appeal.

Wife raises the following issues on appeal:

A. Where the overall equitable distribution award failed to accomplish the stated intention of the divorce master in that it was overwhelmingly in favor of Husband, must the award be revised?

B. Where Husband failed to file his inventory, income statement, expense statement, and pre-trial statement, was the divorce master required to bar [Husband]'s testimony and evidence when fashioning the award?

C. Did the divorce master commit errors of law and fact in the allocution of assets and debts such that the equitable distribution award was inequitable to Wife?

D. Did the trial court's failure to issue an order of distribution for Husband's military retirement in accordance with US Army guidelines constitute an abuse of discretion?

E. Did the award of alimony fail to adhere to the facts, fail to provide Wife with sufficient time for rehabilitation, and include an improper penalty if Wife were to challenge the award?

F. Did the divorce master's overall distribution and statements concerning the relative contributions and educational attainments of the parties show a bias against Wife?

Wife's Br. at 4-5 (full capitalization and suggested answers omitted).

Wife's first four issues challenge the equitable distribution award. "Our scope of review in equitable distribution matters is limited. Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be disturbed absent an error of law or abuse of discretion." *Smith v. Smith*, 749 A.2d 921, 924 (Pa.Super. 2000) (quoting *Berrington v. Berrington*, 598 A.2d 31, 34 (Pa.Super.

1991)). The appellant must establish an abuse of discretion by clear and convincing evidence. ***Morgante v. Morgante***, 119 A.3d 382, 386 (Pa.Super. 2015).

"In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights."[1] ***Id.*** (quoting ***Biese v. Biese***, 979 A.2d 892, 895

---

[1] The relevant factors in an equitable distribution determination are:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

*(Footnote Continued Next Page)*

(Pa.Super. 2009)). "[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Moran v. Moran***, 839 A.2d 1091, 1095 (Pa.Super. 2003).

We address Wife's first and third issues together. Wife claims that the equitable distribution award did not reflect the Master's intention to award her with more assets than Husband. She claims the Master disproportionally allocated assets in Husband's favor. Wife further contends that Husband impermissibly benefitted from: $10,000 that Husband withdrew from an Annuity Accumulation Fund Rider ("AAFR"); the Master's finding that Wife was responsible for the Jeep payments and boat storage fees; and the

*(Footnote Continued)* —————————

> (9) The standard of living of the parties established during the marriage.
>
> (10) The economic circumstances of each party at the time the division of property is to become effective.
>
> (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
>
> (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
>
> (11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

profits from the sale of a 2001 Yamaha Bear Tracker all-terrain vehicle ("2001 Yamaha Bear Tracker ATV").

The Master found that the marital estate consisted of the following assets:

1. USAA ROTH IRA titled to [Husband], in the amount of $26,972.77[.]

2. [AAFR] titled to [Husband]. (The value of this item is in controversy however. The parties have stipulated that it is either [$1,413.00 o]r $11,123.00)[.]

3. USAA R[OTH] IRA titled to [Wife] in the amount of $3,716.14.

4. One 1976 Catalina 22 in the name of [Husband] having a value of $2,820.00[.]

5. One 2009 Jeep Wrangler in the name of [Husband], having a value of $14,725.00.

6. One 2006 Yamaha XT 225 in the name of [Husband] having a value of $1,370.

7. One 2006 Dodge Caravan in the name of [Husband] valued at $3,000.

8. 2001 Yamaha Bear Tracker [ATV] which was titled in the name of [Husband] and for which [he] received $500.00 upon transfer.

9. One liability in the name of [Husband] for storage fees due and owing at the time of separation in the amount of $2,155.00 [and the post separation payments on the outstanding loan payments on the Jeep Wrangler at time of separation totaling $4,000.]

10. One checking account titled to [Husband] in the amount of $5,360.34[.]

11. One savings account titled to [Husband] in the amount of $1,006.06[.]

12. One checking account titled to [Wife] in the amount of $105.42[.]

13. One savings account titled to [Wife] in the amount of $25.

14. Upon sale of the marital dwelling the net proceeds were distributed in the following manner; $29,717.00 to Husband . . . and $18,216.62 to Wife . . . . This arrangement was temporarily agreed to in order to facilitate settlement on the house closing, both parties having reserved their rights to litigate the distribution at a later time.

Master's Recommendations, 1/29/16, at 1-3, 12 ("Master's Rec."). The

Master recommended the distribution of assets as follows:

1. It is assumed that the military retirement of Husband accessible to the parties upon Husband's termination of military service in April 2016 will be distributed according to the applicable administrative rules of the retirement. Accordingly, it is further assumed that Wife shall receive the equivalent of fifty percent (50%) of the marital component of that retirement as determined by the applicable coverture fraction. The remainder of this recommended equitable distribution is predicated upon this assumption.

2. The USAA ROTH IRA titled to [Husband], which is distinct from his military retirement, in the stipulated value amount of $26,972.77 to be divided and distributed in equal shares between Husband and Wife.

3. Wife to be awarded the following assets having the following stipulated values[:]

   a. The USAA R[OTH] IRA titled in her name and valued in the amount of $3,716.14.

   b. [O]ne 2006 Dodge Caravan valued at $3,000.00[.]

   c. [T]he checking account titled in the name of [Wife] in the amount of $105.42[.]

- 6 -

d. [T]he savings account titled in the name of [Wife] in the amount of $25.00[.]

4. The following assets are awarded to Husband in equitable distribution[:]

a. [AAFR] valued at $1,413.

b. 1976 Catalina 22 having a value of $2[,]820.

c. 2009 Jeep Wrangler having a value of $14,728.

d. 2006 Yamaha XT having a value of $1,370.

e. [C]hecking account titled to Husband in the amount of $5,320.00[.]

f. [S]avings account titled to Husband in the amount of $1,006.00[.]

g. Husband is credited with the payment of the boat storage liability in the amount of $2,155.00 and the post separation payments on the outstanding loan payments on the Jeep Wrangler at the time of separation totaling $4,000.

[5.] In light of the foregoing, and the stipulated fact that Husband received a greater share of the net proceeds of the marital home, an additional payment from Husband to Wife in the amount of $15,000.00 is appropriate.

*Id.* at 11-12 (emphasis omitted).

Regarding Wife's claim that Husband impermissibly benefitted from the $10,000 withdrawn from the AAFR, the trial court found that "evidence was presented to demonstrate that the $10,000 . . . was for the use of travel arrangements for the parties' children, which was agreed upon by the parties." Pa.R.A.P. 1925(a) Opinion, 2/17/17, at 2 ("1925(a) Op."). The trial court further stated that while "Wife was unable to recall how the expenses were to be paid[,] she did recall agreeing to have the children

- 7 -

travel, and we defer to the Master's determination of . . . credibility . . . and the evidence presented in making the determination of whether knowledge and/or approval for the withdrawal existed." *Id.*[2]  We conclude the trial

_____

[2] The Master found that "approximately $10,000 of funds from the [AAFR] was used to satisfy expenses with regard to bringing the children over to Germany and their living expenses during the stay.  Wife agreed to this."  Master's Rec. at 5.  During the Master's hearing, Wife testified as follows:

> [HUSBAND'S COUNSEL]:  Ms. Granville, the only thing we didn't talk about was, there was an [AAFR] in your husband's name as owner and your name as the insured; and it's my understanding that it had, as of the date of separation, $11,113 and a penny in it.  And then shortly thereafter, $10,000 was withdrawn.
>
> Were you aware of that?
>
> [WIFE]:  On which -- what was that?
>
> [HUSBAND'S COUNSEL]:  It was an [AAFR] that had $11,113 in it.
>
> [WIFE]:  Um-hum.
>
> [HUSBAND'S COUNSEL]:  And shortly after the date of separation, [$]10,000 was withdrawn from that.
>
> Were you aware of that?
>
> [WIFE]:  I don't know.  We had a couple different things. I'm not sure what that one might have been.  Who -- who withdrew it?
>
> [HUSBAND'S COUNSEL]:  [Husband] withdrew it. And if I were to tell you that he paid for passports and air fair [sic] for the children to go over to Germany and visit with him and then to visit several cities in Germany, do you have any reason to disagree that that's where the money was spent?

*(Footnote Continued Next Page)*

court did not abuse its discretion in concluding that the evidence shows the $10,000 was for the children's travel expenditures.

Wife next claims that she should not be responsible for the boat storage fees and the loan payments on the Jeep. The trial court deferred to the Master's discretion in determining the "credit of debts, including whether a single party had possession of the boat and Jeep Wrangler during the period of separation based on the credibility of the witnesses." Opinion and Order, 10/20/16, at 9 (unpaginated) ("Oct. 20 Op."). During the Master's hearing, Husband testified that while he was in Germany, the Army would not ship the boat, so he stored it. N.T., 11/25/15, at 44. He further testified that he paid $2,155 in storage fees. *Id.* at 45-46. Further, Husband testified that he also made the Jeep loan payments. *Id.* at 109-11.

_____

*(Footnote Continued)* ─────────────

> [WIFE]: Maybe some of it. I did pay for the passports; I did arrange for them to get their passports updated and do that. Maybe -- he was in charge of our finances, so if he did withdraw that money then maybe he did do that. And I do know our children did go to Germany.
>
> He did deduct, though, from whatever he was giving me at that time -- we didn't have child support, so he was, you know, we just had a verbal agreement that he would send me some money to take care of the kids. He told me he was gonna start deducting from that money because he would be paying for all their plane tickets; and then I agreed to that as well. So I'm not exactly sure that he took that money out, what he used it for, I'm not clear on that.

N.T., 11/25/15, at 151-53.

The Master had the opportunity to assess Husband's behavior and demeanor and found his testimony with regard to the boat storage fees and the Jeep loan payments credible. We agree with the trial court's determination to defer to the Master.

Finally, regarding Wife's claim that the Master failed to include in his recommendation the proceeds from the sale of the 2001 Yamaha Bear Tracker ATV, we conclude any such error is harmless. The parties stipulated that Husband sold the property, for which he received $500. *Id.* at 8. While it appears that the Master overlooked the distribution of this amount, it does not materially affect the overall equitable distribution scheme. *See Morgante*, 119 A.3d at 386; *Smith v. Smith*, 653 A.2d 1259, 1268 (Pa.Super. 1995).

When viewing the equitable distribution scheme as a whole we find no abuse of discretion. The Master took into consideration the relevant factors, the parties' testimony, and all the evidence it had available, and made its recommended distribution. We conclude that the trial court did not abuse its discretion in adopting the Master's equitable distribution recommendations.

In Wife's second issue, she challenges the Master's failure to preclude Husband's testimony. Wife claims Husband's testimony should have been barred under Pennsylvania Rule of Civil Procedure 1920.33 because he failed to timely file the documents required by that Rule, including a pre-trial

statement, inventory, and income and expense statement. The version of

Rule 1920.33 in effect at the time of the Master's hearing stated:

>    (a)    Within ninety days after service of a pleading or petition containing a claim for determination and distribution of property under Section 3502 of the Divorce Code, each party shall file an inventory specifically describing all property owned or possessed at the time the action was commenced.
>
>    . . .
>
>    (d)(1) A party who fails to comply with a requirement of subdivision (b) of this rule **shall**, except upon good cause shown, be barred from offering any testimony or introducing any evidence in support of or in opposition to claims for the matters not covered therein.
>
>    (2)    A party **shall**, except upon good cause shown, be barred from offering any testimony or introducing any evidence that is inconsistent with or which goes beyond the fair scope of the information set forth in the pre-trial statement.

Pa.R.Civ.P. 1920.33(a), (d)(1)-(2) (emphasis added).[3]

---

[3] Wife cites the version of this rule in place at the time of the parties' separation and the Master's hearing. While this rule has been revised since, we apply the earlier version as it was the rule in place at all relevant times. The current version of Rule 1920.33, effective October 1, 2016, states:

>    (a)    If a pleading or petition raises a claim for equitable division of marital property under Section 3502 of the Divorce Code, the parties shall file and serve on the other party an inventory, which shall include the information in subdivisions (1) through (3) . . . . Within 20 days of service of the moving party's inventory, the non-moving party shall file an inventory.

*(Footnote Continued Next Page)*

At the outset of the hearing, the Master acknowledged receipt of Husband's inventory. N.T., 11/25/15, at 6-7. Wife did not object. Later in the hearing, Wife objected to the admission of Husband's amended pretrial statement. The following exchange occurred:

> [WIFE'S COUNSEL]: I maintain the same objections that I had maintained before. The only additional objection would be to the additional pretrial statement. I believe it doesn't comply with the rules as to being timely submitted, so I raise an objection as to the amended, if you will, pretrial statement.
>
> THE MASTER: What particular aspects of the pretrial statement do you have objections to?
>
> [WIFE'S COUNSEL]: I believe it changes some of the calculations. I mean, I wouldn't change the stuff we stipulated to, of course.
>
> THE MASTER: I guess I'm confused then.
>
> [HUSBAND'S COUNSEL]: Well, my only comment to that is that we agreed on the phone to change the numbers that we stipulated to, and I think we also agreed that the other numbers that were placed in there, given the nature of the fact that we changed -- or agreed upon, I should say, the date of separation, were not agreed to; so I don't

*(Footnote Continued)* _____

. . .

> (d)(1) A party who fails to comply with a requirement of subdivision (b) **may be barred** from offering testimony or introducing evidence in support of or in opposition to claims for the matters omitted.
>
> (2) A party **may be barred** from offering testimony or introducing evidence that is inconsistent with or goes beyond the fair scope of the information set forth in the pre-trial statement.

Pa.R.Civ.P. 1920.33(a), (d)(1)-(2) (emphasis added).

understand your objection to the timeliness of it. We talked about that and agreed to do it.

[WIFE'S COUNSEL]: If the only change between the first one was the numbers that we stipulated to, I would not have an objection.

[HUSBAND'S COUNSEL]: Well, and the only necessity for me to have included the other three numbers under liabilities was the fact that we finally agreed on the date of separation, so I had to include those as liabilities as at the time that would not have been in existence if we went with August of 2013; so again, I think one necessitated the other. That's just my response.

THE MASTER: I will accept the filing as made with the stipulations that you noted in the beginning of the testimony, and then we can proceed with defense.

*Id.* at 123-24.

The trial court found:

[T]he parties disagree as to the timeliness of production of such documentation. The evidence suggests that Husband provided a copy of his amended statement and inventory to Wife and the Master as soon as practical, considering the parties were unable to stipulate to the date of separation until just days before the hearing and the record reflects that the parties had discussed Husband amending his earlier pre-trial statement as a result of the stipulated date of separation.

1925(a) Op. at 3. We agree. Further, in its October 20, 2016 order, the trial court explained that "counsel for the parties were not able to stipulate as to the date of separation to be used at the hearing until just days before the hearing[,] which required amending the inventory to reflect debts going back to the official date of separation." Oct. 20 Op. at 8-9 (quotation omitted). We discern no abuse of discretion.

Wife's fourth issue is that the Master erred by not determining the

- 13 -

coverture fraction and that the Master's division of Husband's military retirement benefits did not meet the requirements of Army regulations.

The trial court addressed this issue in its 1925(a) opinion:

> Regarding the distribution of Husband's pension, we believe the language of the Master's Recommendations is sufficient to exact an equal distribution. Although the Master assumed distribution will occur in accordance with the applicable administrative rules to grant Wife half of the marital component of Husband's pension, the Master makes clear that the parties will each receive half of Husband's pension and that the overall distribution incorporates dividing the marital portion of the pension equally between the parties.

1925(a) Op. at 3. We agree. Therefore, we conclude the trial court did not abuse its discretion in adopting the Master's recommendation as to division of the Husband's retirement pension.

Wife's fifth issue challenges the alimony award. "Our standard of review regarding . . . [an] award of alimony is whether the trial court abused its discretion." *Moran*, 839 A.2d at 1097. An award of alimony should reflect the "reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.'"[4] *Id.* (quoting *Twilla v. Twilla*, 664 A.2d 1020, 1022

---

[4] Section 3701(b) of the Divorce Code sets forth the relevant factors in an alimony determination:

> In determining whether alimony is necessary and in determining the nature, amount, duration and manner of

*(Footnote Continued Next Page)*

payment of alimony, the court shall consider all relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of

*(Footnote Continued Next Page)*

(Pa.Super. 1995)). Further, "[a]limony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." **Id.** (quoting **Twilla**, 664 A.2d at 1022) (emphasis in original). "[T]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." **Id**. at 1096 (quoting **Twilla**, 664 A.2d at 1022).

Wife claims that: (1) the award of $500 per month for a period of 24 months was insufficient; (2) the award included an improper penalty if she were to challenge the alimony award; (3) the Master "downplayed the conspicuous disparity between Husband's income of $5,692.87 and Wife's

_(Footnote Continued)_ ───────────

> one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).
>
> (15) The Federal, State and local tax ramifications of the alimony award.
>
> (16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.
>
> (17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b).

income [of] $1,765.91 stating that the difference is not large," Wife's Br. at 36; (4) Husband's expert's testimony should not have been admitted; and (5) because Wife is in school and it will take 4 years of part-time study for her to complete her bachelor's in education, the alimony award should be for a period of 4 years rather than 24 months.

The trial court upheld the Master's findings and stated:

> The Master has properly considered relevant factors, including the likely incomes of the parties and their similar education levels, in determining the necessity, duration, and amount of alimony. In addition, we have considered the Pennsylvania Support Guidelines, which we believe are substantially in line with the award of alimony. Any slight deviation from the Pennsylvania Support Guidelines [is] justified based on the overall circumstances of the parties in this case. In addition, for the reasons set forth in the October [20, 2016] Order,[5] we also believe that the award of alimony recommended by the Master is for a sufficient time frame for Wife to become self-sufficient, considering Wife has a work history and was pursuing educational opportunities. Although Wife disagrees with our interpretation, we do not consider the language "[i]n the event of exceptions being raised by [Wife], . . . Husband's payments to Wife during pendency of

_____

[5] In its October 20, 2016 order, the trial court found:

> the Master ordered an appropriate period of time and amount of money to be paid in alimony. The amount of $500 per month to be paid over 24 months provides reasonable support for [Wife] to meet her needs. Considering that [Wife] has been employed in the workforce and is pursuing a Bachelor's Degree, we believe that 24 months is sufficient.

Oct. 20 Op. at 9.

> exceptions or appeals should be credited toward the total amount owed by him pursuant to this recommendation or the court's final resolution" from the Master's Recommendations to be punishing Wife. Rather, we consider this language to protect Husband from paying any additional sums during the pendency of exceptions, thereby allowing Wife to unfairly receive additional sums and encouraging Wife to file exceptions that may not be warranted.

1925(a) Op. at 3-4. We agree.

Moreover, we reject Wife's claim that the Master "downplayed" the parties' income disparity. In discussing the section 3701(b) factors, the Master acknowledged that Husband had a higher income than Wife and that the difference in earnings would likely continue into the near future. The Master determined that the factor regarding the parties' incomes weighed in Wife's favor. We find the trial court did not abuse its discretion in upholding the Master's Recommendations concerning the award of alimony.

Finally, Wife's argument that the Master should not have considered the testimony of William Walker, Husband's expert, fails. Wife claims that the Master "presumably" relied on Husband's expert in stating that Husband's income would be lowered after retirement. Wife's Br. at 36. The Master stated, however, that while the expert's testimony was credible and "enlightening insofar as the issue of [Husband]'s vocational capabilities and future income potential are concerned[,] . . . the most weight is assigned to the testimony of the parties themselves." Master's Rec. at 4. We conclude that the trial court did not abuse its discretion in "deferring to the Master as

to how much weight should be assigned to [the expert's] testimony." Oct. 20 Op. at 8.

In Wife's last issue, she claims the Master exhibited bias against her. However, Wife has waived this claim for failing to include it in her Pennsylvania Rule of Appellate Procedure 1925(b) statement.[6] **See Middleton v. Middleton**, 812 A.2d 1241, 1245 (Pa.Super. 2002) ("Any issues not raised in a 1925(b) statement will be deemed waived.") (quoting **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)). Even if Wife had preserved this claim, however, we would find it meritless. As the trial court stated:

> At multiple points, in evaluating the factors that the Master considered in coming to his decision, he stated "[t]his factor weighs in favor of [W]ife." The Master provided weight to [Wife]'s role as caretaker of the home and the children when he stated in Factor 7 that "[b]oth parties contributed to the marriage financially and otherwise." The Master went on to say that "[W]ife . . . contributed through her earnings, but also as a homemaker and child care provider for the parties' minor children[."] This demonstrates that the Master considered [Wife]'s contributions to the marriage and weighed that in his consideration of distribution of the assets.

Oct. 20 Op. at 7-8 (internal citations omitted). While Wife may not agree with the Master's recommendations, this alone does not indicate, nor do we find any indication of, bias or ill-will.

_____

[6] Wife's Rule 1925(b) statement incorporates by reference her exceptions to the Master's Recommendations. However, in her exceptions, Wife did not assert that the Master demonstrated bias against her.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/18/2017