J-A19012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN KODENKANDETH, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARY F. KODENKANDETH, | |
| Appellee | No. 1082 WDA 2013 |

Appeal from the Decree Entered June 11, 2013
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD07-1796-004

| | |
|---|---|
| JOHN F. KODENKANDETH, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARY F. KODENKANDETH, | |
| Appellant | No. 1092 WDA 2013 |

Appeal from the Decree Entered June 11, 2013
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-07-001796-004

BEFORE:  BENDER, P.J.E., OLSON, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 05, 2014**

John Kodenkandeth (Husband) and Mary F. Kodenkandeth (Wife) each

acting *pro se* filed cross-appeals after the decree in divorce was entered on

_____

[*] Former Justice specially assigned to the Superior Court.

June 11, 2013. Both parties raise numerous issues related to the equitable distribution of the marital estate, which was essentially set forth in a trial court order dated January 22, 2013, after a one-day trial was held on December 7, 2012. Following our review, we affirm.[1]

The parties were married on July 11, 1971, and separated on April 20, 2010. Husband filed a complaint in divorce on June 9, 2010, which led to extensive litigation over the ensuing years. Now, on appeal, Husband raises six issues with a total of ten sub-issues. Meanwhile, Wife raises fourteen issues for our review.

Generally, in addressing the types of issues raised in this appeal, we are guided by the following:

> "Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." **Harasym v. Harasym**, 418 Pa. Super. 486, 614 A.2d 742, 746 (Pa. Super. 1992). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." **Zollars v. Zollars**, 397 Pa. Super. 204, 579 A.2d 1328, 1330 (Pa. Super. 1990), *appeal denied*, 527 Pa. 603, 589 A.2d 693 (1991).
>
> Pursuant to 23 Pa.C.S.A. § 3502(a), when fashioning equitable distribution awards, the trial court must consider: the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of

_____

[1] This Court consolidated *sua sponte* the parties' cross-appeals by order dated July 18, 2013.

- 2 -

each party to the acquisition, depreciation or appreciation [of] marital property[;] value of each party's separate property[;] standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children.  23 Pa. C.S.A. § 3502(a)(1-11).  The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion.  **Gaydos v. Gaydos**, 693 A.2d 1368, 1376 (Pa. Super. 1997) (*en banc*).

**Mercatell v. Mercatell**, 854 A.2d 609, 611 (Pa. Super. 2004). "Furthermore, the trial court has 'the authority to divide the award as the equities presented in the particular case may require.'"  **Id.**  We also recognize that when reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of the property rights."  **Hayward v. Hayward**, 868 A.2d 554, 559 (Pa. Super. 2005).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the thorough and well-reasoned analysis provided by the Honorable Kathryn Hens-Greco of the Court of Common Pleas of Allegheny County in her opinion, dated September 13, 2013.  We conclude that Judge Hens-Greco considered the statutory factors as they applied to the facts of this case and correctly disposed of the issues presented by both parties.

Accordingly, we adopt her opinion as our own and affirm the decree on that basis.[2, 3]

    Decree affirmed.


Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/5/2014

_____

[2] In affirming the trial court's decree, we recognize the court's correction of the math error involving the sum of $6,026.

[3] We note that in June of 2014, Husband filed an application to strike and a motion to quash Wife's cross-appeal. In light of our review and our adoption of the trial court's opinion, we hereby deny both Husband's motion and his application as moot.

- 4 -



IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

John F. Kodenkandeth,

        Plaintiff,

v.

Mary F. Kodenkandeth,

        Defendant.

:
:
:
:
:
:
:
:
:

OPINION

No.: FD-07-1796-004

1082 WDA 2013
1092 WDA 2013

BY:

Honorable Kathryn Hens-Greco
440 Ross Street
Suite 5077
Pittsburgh, PA 15219

COPIES TO:

Pro Se Plaintiff:

John F. Kodenkandeth
1663 Broadway Avenue
Apt. No. 3B
Pittsburgh, Pa 15216

Counsel for Defendant:

Max A. Levine, Esq.
Four Gateway Center
Suite 2200
444 Liberty Avenue
Pittsburgh, Pa 15222-1207

(412) 281-5423

FILED
2013 SEP 13 PM 3:25
DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

John F. Kodenkandeth,                    :
                                         :
            Plaintiff,                   :      No.: FD-07-1796-004
                                         :
    v.                                   :      1082 WDA 2013
                                         :      1092 WDA 2013
Mary F. Kodenkandeth,                    :
                                         :
            Defendant.                   :

                          OPINION

HENS-GRECO, J.                                    September 13, 2013


    In this matter, John F. Kodenkandeth ("Husband") appeals from this Court's Order, dated

January 22, 2013 following a trial on December 7, 2012 on claims for equitable distribution, alimony

and counsel fees. Both parties appeared *pro se*. Mary F. Kodenkandeth ("Wife") cross-appealed. This

Court denied both Husband and Wife's requests for reconsideration by Orders dated March 26, 2013

and March 28, 2013.[1]  The divorce was finalized by the issuance of a decree, dated June 11, 2013.

This Court finds no error warranting relief in Husband's appeal. Wife's cross-appeal is meritorious for

an unfortunate math error described herein. The Court finds no error warranting relief in all other

matters contained in Wife's cross-appeal.

                    I.  FACTUAL AND PROCEDURAL HISTORY

    Husband came to the United States in 1967 to study at the University of Pittsburgh. *See*

Testimony of Transcript (" T.T."), at 9.  He earned post-graduate degrees in industrial engineering,

---

[1] *See* Order of Court, dated March 26, 2013.  See also Amended Order of Court, dated March 28, 2013.  The latter
Order amended the former to correct a clerical error; the March 26, 2013 Order mistakenly stated that the parties'
exceptions stemmed from a Hearing Officer's Report and Recommendation from October 2012.  There was no such
hearing, as the parties appeared in front of this Court on January 22, 2013.  This error is what Husband is referring to in
his Concise Statement, Paragraph J.

1

information sciences and business administration. *Id.* After finishing his studies, Husband returned to India to marry Wife. The parties wed on July 11, 1971. *Id.*, at 11. The parties moved to Pittsburgh in 1972. *Id.*, at 14. The parties' son, John F. Kodenkandeth, Jr., was born in 1973. *Id.*, at 18. Wife was a dentist in India, but could not practice in the United States until 1975, when she passed her boards. *Id.* That same year, the parties bought a dental practice in downtown Pittsburgh. *Id.*, at 23. In 1976, the parties bought the marital residence. *Id*, at 26. In 1977, the home was renovated to accommodate Wife's second office. *Id.*, at 27. Wife's practice did well until the decline of the steel industry in the early 1980s. *Id.*, at 29-30. During that time, Husband had worked for AT&T, and then later, became a very successful investor. He also bought and rented out various properties. *Id.*, at 32. The parties created the John F. and Mary F. Kodenkandeth Charitable Remainder Trust in 1996. *Id.*, at 36.

Between 1990 and 2000, the parties' income increased substantially. *Id.*, at 37. Husband testified that in March of 2000, "everything was at its peak." *Id.*, at 40. After that benchmark, however, the parties' financial health became ever more precarious. Husband ran afoul of the IRS regarding the management of the trust and the parties' Roth IRAs. *Id.*, at 45. The marriage too became unstable; Wife filed a Protection From Abuse Petition against Husband in January 2008. The parties separated on April 20, 2010. Husband filed a complaint for divorce on June 9, 2010. That pleading set into motion extensive litigation.

## II. THE PARTIES' JOINT CONTENTIONS

### A. Procedure

Both parties contend there were procedural errors. Husband contends that this Court erred in preventing him from cross-examining Wife during the equitable distribution trial. *See* Husband's Concise Statement, at Paragraph 27. Wife contends that this Court erred in limiting Wife's ability to present her case and for failing to enforce Wife's right to receive requested discovery documents necessary to present her case. *See* Wife's Concise Statement, at Paragraphs 10; 11.

2

"The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." *See* Pa.R.C.P. 126. Rule 126 does not *require* the trial court to disregard procedural defects; rather it *permits* the trial court, in the exercise of its discretion, to do so where the substantive rights of the opposing party have not been prejudiced. *Slaughter v. Allied Heating*, 636 A.2d 1121, 1125 (Pa. Super. 1993) (emphasis original) (quoting *Anderson v. Centennial Homes, Inc.*, 594 A.2d 737, 739 (Pa. Super. 1991)) (see also *Williamson v. Williamson*, 586 A.2d 967, 973 (Pa. Super. 1991)).

The equitable distribution trial was held on December 7, 2012. Discovery began with Interrogatories in October 2010, and between Husband and Wife, there were 23 individual pleadings, regarding what was produced or not produced in discovery. Husband and Wife would each argue that the other was in possession of a vital document. The responding party would assert the document did not exist, or if it did exist, it was already available to the petitioner. This identical argument occurred virtually every week in motions court until this Court's Order of April 29, 2011.[2] Following the April 29, 2011 Order, there was a hiatus until the date in which the parties had been separated for two years. At that point, there were ten more pleadings argued in motions regarding discovery issues, including Wife's emergency motions for discovery and to continue the trial. Both emergency motions were presented to other judges.

Both Husband and Wife have advanced degrees, assets and income, and have achieved professional success. Husband has always chosen to represent himself. Wife was mostly a *pro se*

---

[2] On April 29, 2011 the Court ordered as follows: "All issues for discovery requests shall be handled in this manner: If the document is not provided through discovery or attached to the pre-trial, it will NOT be admitted by the Court in the equitable distribution hearing to be scheduled by separate order of Court in front of a Master. No further motions regarding pre-trial discovery will be heard by the Court."

3

litigant as well, although she did retain counsel at one point for about six months. Both chose to appear *pro se* at trial.

At the beginning of each party's case-in-chief, and throughout the one-day trial, this Court instructed Husband and Wife to use their time wisely and outlined for them their obligation to explain to the Court any issue that would aid the Court in making its decision on the issues of equitable distribution. Husband said he understood this instruction, outlined his case, and even reserved time for a closing argument. *See* T.T., at 8, Lines 23 – 25; at 9, Lines 1-10. Nevertheless, Husband chose to give to the Court an oral history of most every grievance he has with, and most every favor he has done for, Wife. For her part, Wife would discuss revenue streams and financial need in one moment, and in the next breath she would inform the Court that Husband would watch pornography while she cooked and cleaned. *Id.*, at 241-242. The parties' exhibits also had varying degrees of financial relevancy.[3] With tensions already running high, the Court did interrupt when either Husband or Wife had clearly run amok and cautioned the parties that the day's scope was limited to equitable distribution.[4]

The transcript of testimony reflects the difficulty the parties had in clearly presenting evidence on matters related to equitable distribution. Substantive testimony on assets and liabilities often lasted for a minute or less. Important arguments filled only a paragraph or a page of the transcript. The reason for such limited evidence in the record is due to the parties' mismanagement, not the Court's unfair strictures. The parties each had three hours to present testimony and evidence related to equitable distribution, alimony and counsel fees to the Court. *See* T.T., at 6; at 35; at 129; at 256. There were no other witnesses. They chose to use the allotted time to rehash matters that did not aid the Court in identifying, valuing and assigning assets. Wife also had an abundance of time, over two years

---

[3] *See* T.T., at 168, Lines 18-20.

[4] For example, Husband related a story about how he had just started to enjoy himself during a family vacation in Egypt when Wife asked him for brand name water. *See* T.T., at 34. At this point the Court interrupted: "Let me stop you [Husband]. I know you want to give me background and history, and background and history related to assets is incredibly important. The things that you are describing now are important to you but less important to the determination that I have to make." *Id.*, at 34-35. Husband acknowledged his time restriction, but then chose to finish the story. *Id.*, at 35.

4

in fact, to discover and review Husband's documents and to obtain legal counsel. Rejecting Wife's literal last minute plea to continue the trial was not an abuse of this Court's discretion. For the aforementioned reasons, the Court's trial instructions did not prejudice parties' substantive rights.

## B. The Marital Residence

This Court held that the parties' marital residence has a value of $215,200.00. After deducting seven percent (7%) for the realtor's commission, transfer stamps and closing costs, this Court distributed to Wife 60% - and to Husband 40% - of the net martial equity. *See* Order of Court, dated January 22, 2013, at Paragraph 1. Both parties appeal this Court's distribution of the marital residence. Husband argues that this Court's valuation should have been based on a more current assessment. *See* Husband's Concise Statement, Paragraph 1. This contention is without merit.

"A trial court does not abuse its discretion in adopting the only valuation submitted by the parties." *Baker v. Baker*, 861 A.2d. 298, 302 (Pa. Super, 2004) (citing *Litmans v. Litmans*, 673 A.2d 382, 395 (Pa. Super, 1996). "Where the evidence offered by one party is uncontradicted, the Court may adopt this value, even though the resulting valuation would have been different if more accurate and complete evidence had been presented." *Id.* If one party disagrees with the other party's valuation, it is his burden to provide the court with an alternative valuation. *Id.* (citing *Smith v. Smith*, 653 A.2d 1259, 1267 (Pa. Super. 1995)) (*appeal denied*, 663 A.2d 693 (Pa. 1995)).

During the trial, Husband offered no evidence or testimony regarding the value of the house. The only relevant words he spoke during the trial concerning the marital home was that it was bought in 1976 and that it was newly constructed at the time of purchase. *See* T.T., at 26. For her part, Wife offered three separate exhibits that spoke to the value of the marital residence. *Id.*, at 224-227. *See also* Wife's Exhibits P.P. (the Allegheny County assessment), Q.Q. (Howard Hanna assessment), R.R. (Caldwell Banker assessment). Of those three, this Court relied on the 2012 Allegheny County assessment, which listed the residence's value at $215,200. The other two assessments, though not substantially different in value, were nevertheless conducted in 2010.

5

In his Concise Statement, Husband stated that the Court wrongly used a 2009 assessment and instead should have used a more current value in 2013. *See* Husband's Concise Statement, at Paragraph 1. This argument is misguided. The Allegheny County assessment was clearly conducted in 2012 and pertains to 2013. *See* Wife's Exhibit P.P. Furthermore, the Equitable Distribution trial was conducted on December 7, 2012. Left with few documents, and less testimonial evidence, all of which came exclusively from Wife, this Court found that the marital residence was $215,200, per the Allegheny County assessment.

Wife argues that the Court erred by awarding Husband any monetary interest in the marital residence. In the alternative, Wife argues that the Court's Order contained a mathematical error, the result of which was an improper award to Husband to the tune of an additional $6,026. *See* Wife's Concise Statement, Paragraph 1.

As to the first point, there is no question that Husband has an interest in the marital residence. The house was bought during the marriage, and thus falls squarely in the definition of martial property. *See* 23 Pa. C.S.A. § 3501. Husband resided in the house until he was forced to leave by virtue of Wife's PFA against him in January 2008. He returned to the home for a time before the final date of separation in April 2010.

On the other hand, Wife's second point is correct. This Court's Order contained an unfortunate mathematical error. Maintaining that the initial valuation ($215,200) and the initial costs calculation (7%) are correct, the error came in the distribution of the net marital equity. The net martial equity was properly determined to be $200,136. However 40% (Husband's share) of $200,136 is not $86,080. Rather, Husband's share is actually $80,054, as Wife illustrates in her Concise Statement, at Paragraph 1.

### C. CDs and other non-retirement assets

This Court found that prior to separation, Husband and Wife divided their funds, with Wife receiving $230,412.16. *See also* Wife's Exhibit G.G. This Court found that Husband's financial assets,

6

including stocks and a checking account, have a value of $128,628.00. *See* Order of Court, dated January 22, 2013, at Paragraph 5; 7 *See also* Husband's Trial Aid 5.

Wife contends these findings are erroneous. She argues that certain property has been misidentified, undervalued or double-counted. She also contends that Husband is not reporting all of his assets. *See* Wife's Concise Statements, at Paragraphs 2-3. Husband also disagrees with the Court's valuation of Wife's non-retirement assets, but does not contest the Court's valuation of his own. *See* Husband's Concise Statement, at Paragraph 6.

This Court reiterates: "In determining the value of marital property, the court is free to accept all, part, or none of the testimony as to the true and correct value of the property." *Litmans v. Litmans*, 673 A.2d 382, 387 (Pa. Super. 1996) (citation omitted). A related proposition is that, "a trial court does not abuse its discretion in adopting the only valuation submitted by the parties." *Baker v. Baker*, 861 A.2d. 298, 302 (Pa. Super. 2004) (citing *Litmans*, at 395).

Boiled down, both parties argue that the valuation findings of the Court are inaccurate. This Court is limited by the evidence of the record. Wife introduced Exhibit G.G., which is a letter to E*Trade authorizing a transfer to Wife in the amount of $230, 412.16. This letter reflected a pre-separation agreement between the parties to split their funds. The remaining balance stayed with Husband. In the absence of any other evidence, this Court does not find credible Wife's other testimony on the matter. *See* T.T., at 151-153.

At the trial, neither party substantially contested the evidence. Wife never offered any specific figures or a basis for her charge. *See* T.T., at 74. Wife's simple statement that Husband has more money than he claims, without more, is an insufficient challenge. It is not that Wife's testimony is inconsequential. Rather, in this instance, Husband's documentary evidence is more reliable than Wife's recollection. Husband provided various bank statements regarding his finances. *See* Husband's Trial Aid 5; Exhibits 5a-5e.

7

In these matters especially, this Court determined that the documentary evidence was more credible than the testimony of the parties. As such, the Court grounded its decision upon the most reliable foundation it could. That the parties now argue that there was more to the story does not render this Court's decision erroneous.

## D. Foundation/Trust

This Court determined that both the John F. & Mary F. Kodenkandeth Charitable Remainder Trust ("Trust") and the John F. & Mary F. Kodenkandeth Foundation ("Foundation") held at the custodian E*Trade are not marital assets and were not distributed by this Court. *See* Order of Court, dated January 22, 2013, at Paragraphs 12,13. Wife argues that this Court erred by not including the Trust and Foundation in its equitable distribution scheme. *See* Wife's Concise Statement, at Paragraphs 6;7. Husband does not contest the Court's finding, but argues that he should be compensated for Wife's interference with the Trust. *See* Husband's Concise Statement, at Paragraph 12.

There is a presumption that all real or personal property acquired by either party during the marriage is presumed to be marital property. *See* 23 Pa. C.S.A. § 3501(b). The presumption of marital property is overcome by a showing that the property was acquired by a method listed in § 3501(a). *Id.* Marital property does not include property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the date of separation. § 3501(a)(5).

There are two facets to the Court's determination; the first is that the Trust, itself, is not marital property. The second element is that while unpaid distributions from charitable remainder trusts may be martial property, this Court could not equitably divide those distributions because of the substantial lack of evidence and testimony.

The Court was provided only with limited evidence regarding the Trust and Foundation. Husband testified that the Trust was formed because the parties sought relief from the burden of maintaining one of their assets, a 12-unit apartment building. *Id.* Instead of selling the building

8

outright, they decided to gift it to the Trust. Evidently, this is how the Trust received its principal. From there the parties, as co-trustees, would make investments, and then the parties, presumably in their capacity as the donors, received a distribution. *See* Wife's Exhibit N., Trial Aid O. The remainderman, or beneficiary, of the Trust was the John F. & Mary F. Kodenkandeth Foundation. *See* Husband's Exhibit 17, at Paragraph 9.

Husband testified that he created the Foundation in 1992 with the intent to give back to America, as a benefit for future generations. *See* T.T., at 36. Its purpose was to "do cross-cultural things." *Id.* Husband testified that the Foundation is a 501(c)(3), that it now belongs to the community and to neither party. *Id.*, at 86. Neither party contests the charitable purposes of the Foundation. Neither party provided to the Court the relevant details relating to its creation. *See* 20 Pa. C.S.A. §7732 (requirements for trust creation). Wife froze the Trust on April 27, 2010. *See* T.T., at 185. *See also* Wife's Exhibit O.

Based only on the limited evidence provided, this Court's position is that this Trust, like other charitable remainder trusts, appears to be irrevocable in nature. *See* Wife's Exhibit O. Even though the parties appear to be receiving some sort of a revenue stream from the Trust while they are alive, and even though the parties appear to have been managing the Trust until Wife froze the account, both parties also appear to have given up their property interests in the principal. This Court cannot divide property in which neither party has a financial interest – namely the Trusts' principal or Foundation. *(See generally In re Estate of Feinstein* 527 A.2d 1034, 1035-1036 (Pa. Super. 1987)) *(See also* Internal Revenue Code 26 U.S.C.A. §664).

The critical distinction between a charitable remainder trust and other irrevocable trusts does not necessarily release this Court from the task of dividing the Trust's unpaid income distributions. In *Solomon v. Solomon,* 611 A.2d 686, 688 (Pa. 1992), the Court stated that "if there had been any dividend or interest income that was not paid to the parties, but remained in the trust, as in the nature of any investment during the marriage, such would necessarily be deemed marital property, and it

9

together with any income generated thereby, would be subject to equitable distribution." *Id.*, at Footnote 9. Nevertheless, this Court did not, indeed could not, equitably distribute the Trust's annual distributions due to an utter lack of evidence.

The trust agreement was not admitted into evidence, or even really discussed. As such, the Court was kept in the dark concerning critical facts, e.g., the terms of the distributions, whether the Trust was an annuity trust or unitrust, how distributions operate, how much income the parties' receive. Wife introduced Exhibits N., O., P., Q., and L.L., relating to the Trust and Foundation; but none helps the Court in its endeavor to divide the distributions. Exhibits N. and O. purport to show the value of the Trust by date and the amounts distributed up until December 31, 2007.[5] These Exhibits appear to be prepared by Wife, but contain no official documentation from the Trust's custodian, E*Trade, nor are they particularly clear. Exhibits P. and Q. are official statements from E*Trade, but do not contain any information regarding the distributions. Wife's testimonial and documentary evidence regarding the distributions, based entirely from memory and estimations, is simply not accurate enough for this Court to consider the Trust's unpaid distributions in its equitable distribution scheme. *See generally* T.T. at 180-191.

Husband argues that this Court erred in not compensating him for Wife's "interference" with the Trust's operations, i.e., when Wife froze the Trust. *See* Husband's Concise Statement, at 12. Because the Court decided that the Trust was not martial property – a decision with which Husband agrees – it will not adjudicate this claim. The Trust, as a separate entity, is outside this Court's purview. Husband is dissatisfied with the measures taken by co-trustee-Wife to address what she perceived to be mismanagement, but this Court will not substitute its knowledge for that of the co-trustees where there is no evidence of record of its marital character.

**E. Equitable Distribution Scheme**

---

[5] According to these documents, the Trust distributed a total of $34,841.50 to each party since the Trust's inception to December 31, 2007. These distributions occurred prior to the final date of separation on April 20, 2010.

10

The parties' final shared contentions all relate to this Court's general equitable distribution scheme. *See* Husband's Concise Statements, Paragraphs 21 and 25. These paragraphs act as a sort of catchall, such that if this Court erred regarding the jewelry (see IV- B for example), then that error would have corrupted the whole distribution scheme. Wife's Concise Statement contains a similar provision. *See* Wife's Concise Statement, Paragraph 9. Because this Court believes that its underlying findings are proper, then so too is its general distribution scheme. Therefore, Husband's Paragraphs 21 and 25, and Wife's Paragraph 9 are equally without merit.

## III. WIFE'S SPECIFIC CONTENTIONS

### A. IRA

Wife argues that this Court erred in finding that the marital value of Husband's IRA is only $1,000 and in awarding to Husband said I.R.A. *See* Wife's Concise Statement, at Paragraph 4. *See also* Order of Court, dated January 22, 2013, at Paragraphs 8-9.

Wife alleges that Husband mismanaged both IRA accounts and that the extreme diminishment in their value cannot be explained. *See* Wife's Concise Statement, at Paragraph 4. This argument seems to confuse the two IRA accounts. One account, in Wife's name, is valued at $260,682.12. Another account, in Husband's name, is valued at $1,000. The testimony to which Wife directs the Court's eyes refers to the larger account. *See* T.T., at 66. Wife's Concise Statement seems to imply that the smaller account was once $217,000 but is now $1,000. There is nothing in the evidence of record to suggest that that was the case.

In fact, Wife provided no testimony or evidence contesting the ownership or the amount of the smaller IRA. As the *Litmans* and *Baker* provide, this Court is free to accept the only valuation offered at trial. Husband testified credibly and provided the Court with sufficient evidence to make its determination. *See* T.T., at 66. Left with no other argument or alternative valuation, the Court determined that the IRA is valued at $1,000.

### B. Alimony

11

Wife argues that she is due alimony, given the disparity in the respective retirement income entitlements of each party, and given the history of domestic violence. *See* Wife's Concise Statement, at Paragraph 8. This Court denied that claim. *See* Order of Court, dated January 22, 2013, at Paragraph 20.

In general, the Court may award alimony, as it deems reasonable, to either party only if it finds that alimony is necessary. 23 Pa. C.S.A. § 3701(a). In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including those listed in §3701(b).

The relevant statutorily-mandated factors to determine whether alimony is necessary include the following: the relevant earnings and earning capacities of the parties; the ages and physical conditions of the parties; the sources of income of both parties; the duration of the marriage; the standard of living the parties established during the marriage; the relative needs of the parties; the marital misconduct of the parties. *See generally* §3701(b). The Court notes that the factors in §3701(b) do not create an exhaustive list. In fact, the trial court should also consider the assets the petitioning spouse received in equitable distribution. *Ressler v. Ressler*, 644 A.2d 753, 758 (Pa. Super. 1994).

"The purpose of alimony 'is to provide the receiving spouse with sufficient income to obtain the necessities of life.'" *Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005) (quoting *Wagoner v. Wagoner*, 538 Pa. 265, 270 (Pa., 1994)). "Alimony is generally based upon reasonable needs in accordance with the parties' standard of living established during the marriage, and the payor's ability to pay. *Id.* (quoting *Teodorksi v. Teodorksi*, 857 A.2d 194 (Pa. Super. 2004)). Moreover, "alimony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Teodorksi*, at 201(emphasis original) (quoting *Morgan v. Morgan*, 839 A.2d. 1091, 1096-1097 (Pa. Super. 2003)). "The purpose of alimony is not to reward one party and punish another, but rather to ensure that the reasonable needs of the person who

12

is unable to support herself through appropriate employment are met." *Miller v. Miller*, 744 A.2d 778, 788 (Pa. Super. 1999) (quoting *Jayne v. Jayne* 663 A.2d 169 (Pa. Super. 1995)).

During the trial, Wife did not explicitly address the issue of alimony directly, but the day yielded enough information for the Court to conduct a proper §3701 analysis. As far as the §3701 factors are concerned, the Court made the following findings. Both parties are in their 70s. *See* T.T., at 241. The parties divorced one month shy of their forty-second anniversary. During their marriage, they experienced fluctuating standards of living. Husband testified that the parties' wealth had been declining since 2000, well before the parties' separated. In other words, this case is not one in which a newly divorced spouse now finds herself in world of unaccustomed financial hardship. Both parties worked. According to Husband's testimony, he was a successful investor. Wife has had a dental practice since the mid 1970s, though the record reflects that her ability to work is limited. *See* Wife's Exhibit M.M. The Court awarded Wife all of her income from the dental business, as well as interest, dividends, capital gains, and her jewelry. *See* Order of Court, dated January 22, 2013.

As to her argument concerning the disparate retirement incomes, Wife offered very little testimony or evidence to support this claim. Both parties continue to hold investment income. Husband receives a monthly pension of $501.61 per month. *See* Husband's Pretrial Statement, at 6. Wife receives $473, or $458, per month in social security. *See* T.T., at 143. *See also* Wife's Exhibit II. Wife did not provide the Court with any documentation, e.g. a budget, or otherwise make a showing of need. Furthermore, this Court chose not to include the parties' Trust in the equitable distribution scheme. In other words, Wife is not without other assets. The Court is not convinced that Husband has a great ability to pay an alimony obligation, nor is it convinced that Wife is in need of alimony.

Wife's primary argument, however, is that she is entitled to alimony, because she endured domestic violence at the hands of Husband. *See* Wife's Concise Statement, at Paragraph 8. To be clear, the marital misconduct of either party is a factor that the Court must consider in determining whether alimony is appropriate. *See* 23 Pa. C.S.A. §3701(b)(14). Abuse constitutes marital misconduct.

13

*Id. See also* §6102 (relating to the definition of abuse). This Court finds there was marital misconduct. Nevertheless, marital misconduct is but one alimony factor that the Court must consider. In addition to the §3701 factors and findings discussed above, this Court must also consider the result of the equitable distribution.

In *Ressler*, the trial court erred because it failed to consider the assets wife received in equitable distribution. *Ressler v. Ressler*, 644 A.2d 753, 758 (Pa. Super. 1994). The Superior Court stated that if wife received alimony in addition to her portion of the equitable distribution, then wife would have twice the annual income of husband and theoretically enjoy a better standard of living than during the parties' marriage. *Id.*, at 758-759.

Here, Wife received 60% of the parties' retirement and non-retirement assets. *See* Order of Court, dated January 22, 2013, at Paragraphs 21. This Court's position is that the equitable distribution left the parties on financially equal footing. Husband, also of retirement age, was not left in a such better position that he should now be obligated to pay.

In light of the all the relevant factors and in light of the assets Wife received in equitable distribution, this Court "effectuated economic justice." *See* expressed policy of the Divorce code. 23 Pa. C.S.A. §3102 (a)(6). Alimony must only be granted after considering evidence of a party's need, and after an analysis of a party's ability to pay.

## C. AT&T Pension

Wife alleges that this Court erred in finding that Wife waived her interest in Husband's AT&T pension, which is currently in pay status. *See* Wife's Concise Statement, at Paragraph 3. *See also* Order of Court, dated January 22, 2013, at Paragraph 10.

This Court considered Husband's monthly pension, now in pay status, as a monthly income stream to which she waived her survivor's interest. That income was still considered for purposes of equitable distribution in the analysis done by the Court for Wife's alimony request. Wife's only contention is that she waived her rights under duress. *See* T.T., at 145.

14

"Absent fraud, misrepresentation, or duress, parties are generally bound by the terms of their agreements." *Adams v. Adams*, 848 A.2d 991, 993 (Pa. Super. 2004) (quoting *Sams v. Sams*, 808 A.2d 206, 211 (Pa. Super. 2002)). The Superior Court has long defined "duress" as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person or of ordinary finesses." *Id.* (citations omitted).

On this point, the evidence does not support Wife's claim of duress. Wife alleges that "[e]verything was signed over to [Husband.] *See* T.T., at 145. Wife did this because she did not want to be beaten. *Id.* While this Court finds that domestic violence did occur in the home, Wife does not provide any evidence for the Court to conclude that the pension was a marital asset or that she waived her interest to the pension under duress. *See* T.T., at 145-149. Husband was excluded from the marital residence since April 2010 where all of the documents of the marriage were kept. *See* Order of Court, dated September 30, 2010. Wife had access and the ability to produce to the Court such documentation, if it existed.

## IV. HUSBAND'S SPECIFIC CONTENTIONS

### A. Car

This Court found that the Honda Accord was not marital property after Wife testified credibly that the 2010 Honda Accord was paid by Wife from her split of the parties' CD proceeds. *See* Order of Court, dated January 22, 2013, at Paragraph 17. Husband argued that the Honda was marital property, and that he should receive a $10,000 interest in it. *See* Husband's Pre-trial Brief, admitted as Exhibit 17, at Proposed Order #9.

Typically a family car acquired during the marriage would meet the § 3501 definition of marital property. However, property excluded by valid agreement of the parties entered into during the marriage is not martial property. *See* §3501(a)(2).

15

In this case, prior to their date of separation on April 20, 2010, but after the Protection From Abuse Order expired, the parties were again living together for a very brief period. *See* T.T., at 223. At that time, the parties were splitting all expenses. *Id.* This conduct is in line with the parties' valid agreements to split their CDs. *See* Wife's Exhibits G.G., H.H. Husband alleges that on or about January 27, 2010, Wife was involved in a car accident, which totaled their 1994 Mercedes Benz, one of their two cars. *See* Husband's Concise Statement, at Paragraph 11. In need of a car, the parties went together and bought a new 2010 Honda Accord. *See* T.T., at 223. In February 2010, Wife paid for the Honda in full with a check from her account. *Id. See also* Wife's Exhibit O.O. The Court found that that account was already split between the parties. The splitting of that account was made by a valid agreement, and thus Wife's account – and consequently the car – are non-martial property.

Husband argues that parties each received $2,500 in insurance proceeds from the Mercedes wreck, and traded in the parties' second car, a Mazda Protégé, for $1,000 and that they used those funds toward the Honda purchase. *See* Husband's Concise Statement, at Paragraph 11. However, Husband did not provide any evidence to support this claim. In a 257 page transcript, which commemorated a day-long trial, Husband's testimony concerning the Honda can be found between pages 83 and 84. He only argues that the account from which the Honda was paid still belonged to the marital estate. *See* T.T., at 83, Lines 12-14.

But this argument is not particularly persuasive. The parties had started dividing their assets as early as 2008. *See* Wife's Exhibits G.G. and H.H. In his Concise Statement, Husband even admits as much. The Mercedes insurance proceeds were split equally between the parties. *See* Husband's Concise Statement, at Paragraph 11. At trial, this Court was left with no choice but to consider only the parties' testimony and Wife's Exhibit O.O. This Court found Wife's testimony to be more credible on the issue of the Honda. Husband now seeks to improperly backdoor evidence in his appeal. In his Concise Statement, Husband attaches "Exhibit 2," which shows that the price of the Honda was

16

reduced by $1,000 – the price of the Mazda trade-in value.[6] This evidence was not offered at trial, and Husband cannot now seek to introduce the evidence. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. Rule 302(a). (*See also Litmans*, 449 Pa. Super 209, 220-221(1996)) (Spouse failed to provide the trial court with valuation evidence at trial).

However, such an offering is *de minimus* and almost irrelevant. The parties' course of conduct concerning the division of property with regard to the Mercedes proceeds indicates that each party was likely entitled to half of $1,000 from the Mazda trade-in. So even if this Court was afforded an opportunity to consider the missing evidence at the trial, Husband's footing does not substantially improve. The only thing this Court would have learned is that Husband contributed $500 toward Wife's purchase of the Honda, but petitions the Court to equitably distribute to him $10,000.

### B. Jewelry

This Court found that Wife's jewelry and gold coins were pre-marital property and not subject to Equitable Distribution. *See* Order of Court, dated January 22, 2013, at Paragraph 17. Husband argues that this was an abuse of the Court's discretion. *See* Husband's Concise Statement, at Paragraph 17.

Neither property acquired prior to marriage, nor property acquired by devise, is considered martial property subject to distribution. 23 § 3501(a)(1) and (a)(3).

Husband takes great exception to the jewelry matter, dedicating two full pages in his Concise Statement to his cause. He argues that the jewelry, having been acquired during the marriage, is marital property. Husband alleges that the total value of all the jewelry is $165,000. *See* Husband's Concise Statement, at Paragraph 17 (c). By way of appraising the jewelry's value, Husband cites Alexander Hamilton and Richard Nixon and provides the Court with an abridged history of the gold standard. *See*

---

[6] The "Exhibit 2" attached in Husband's Concise Statement, which should not be considered under Pa.R.A.P. Rule 302(a), is not to be confused with Husband's Exhibit 2, which was admitted into the record as a part of the equitable distribution trial.

17

*Id.* There is absolutely no basis for this estimation. It is simply Husband's guess, based on Husband's averment that the value of gold is $1,700 per ounce. *See Id.* In any event, the Court need not discuss Husband's valuation calculus, because the jewelry is not subject to the Court's distribution scheme.

The jewelry in question comes in four different varieties, none of which is marital property. Wife testified that she has had some of the jewelry since childhood. *See* T.T., at 239. Wife acquired most of her personal jewelry from her father before the marriage in anticipation of the ceremony. *Id.* Wife testified that she kept some of her mother's jewelry for her son, per tradition. *Id.* Still other jewelry belongs to the parties' ex-daughter-in-law, Manju, which is currently being returned to her. *See* T.T., at 159-162.

Wife's childhood jewelry, the pieces bought for her by her father, and the items she inherited from her mother are all, by definition, non-marital property. This Court would have been inclined to take a closer look at the appreciation of the jewelry and gold pieces had it been provided any sort of inventory, appraisal, or coherent argument as to what that figure might be. Perhaps it is for those reasons that Husband's principal contention is with Manju's jewelry and dowry, estimated to be $80,000.[7] Neither party offered any exhibit which documented, detailed, or specified the jewelry, or any evidence that would make Manju's jewelry a marital asset. This Court was left with no choice but to adjudicate the matter based on the parties' testimony. To that end, Husband rebutted none of Wife's testimony at trial. The Court was left to rely on Husband's Pre-trial Brief, admitted as Exhibit 17, now unaccompanied by any illumination that his potential testimony could have offered.

Husband alleges that Wife was the recipient of Manju's dowry and jewelry, given by Manju's family in consideration of Manju's marriage to the parties' son. *See* Husband's Exhibit 17, at Paragraph M1. Husband argues that after marriage of John Jr. and Manju broke down, Wife should have done the decent thing and returned the jewelry and dowry to Manju. *See* Husband's Exhibit 17, at

---

[7] Some, most, or perhaps virtually all of Manju's dowry might be in the form of cash. *See* T.T., at 55. This Court has no way of knowing. Either way, the Court found that the dowry, jewelry, gold coins or otherwise, is not subject to the Court's distribution scheme for the reasons to follow.

18

Argument #4. The jewelry and dowry is now subject to a separate lawsuit between Manju's family and the parties. On one hand, Husband argues that the lawsuit amounts to a liability on the marital estate. For this transgression, Husband asks this Court to sanction Wife and to lower the percentage awarded to Wife in the Equitable Distribution. *Id.* On the other hand Husband also petitions the Court to find that the jewelry and dowry is also a marital asset and distribute to him a $25,000 interest. *See* Husband's Exhibit 17, at Proposed Order #10. During the trial, Husband revised his request upward to $35,000. *See* T.T., at 85. Husband's position regarding the jewelry is a paradox. Husband wishes to dump the marital liability on Wife, while retaining the marital asset for himself.

Wife testified that she was only holding Manju's jewelry for safekeeping while Manju made arrangements to emigrate from India. *See* T.T., at 159. When her son's marriage broke down, Wife testified as to how she has sought to return the jewelry to Manju's family. *Id.*, at 160-161. This Court finds that testimony credible. As to the other types of jewelry, this Court is satisfied with Wife's testimony that they are non-marital, especially in the absence of any meaningful contradiction by Husband. Now on appeal, Husband seeks to improperly supplement the record by attaching to his Concise Statement a receipt of purchase from Bhindi Jewelers. *See* Husband's Concise Statement, at Paragraph 17 (d).[8] The Court was never made aware of this information at trial. This receipt and the facts alleged in Paragraph 17(d) should be precluded. Husband again tries to admit evidence through the backdoor, and is again barred for doing so under Pa.R.A.P. Rule 302(a).

Lastly, there is a small matter concerning a piece of jewelry Wife bought during a vacation to Egypt. *See* Husband's Concise Statement, at Paragraph 17(b); (g). Husband is correct that such an item is likely marital property. But when it came to distribution, this Court was again left without a

---

[8] Take note that in Paragraph 17 (d), Husband identifies the receipt as "Exhibit 1." Do not confuse it *this* "Exhibit 1" mentioned in his Concise Statement with Husband's actual Exhibit 1 which he offered into the record at trial – the latter being Husband's petition for expungement. This is the second time Husband makes this mistake. *See* Footnote 6, *infra* (relating to the Honda Accord). This Court assumes that Husband is being a bit careless with his word choice, and is not purposefully misleading the Superior Court.

19

guide.[9] The specific testimony to which Husband directs the Court is deficient of substance. *See* T.T., at 240, lines 11-15. No party identified the item in question, or appraised its value. No other information was provided other than the fact that Wife bought *something* in Egypt. This Court cannot divide sheer ambiguity.

## C. Dentistry Practice

The Court found that Wife's Dental Practice has a *de minimis* value and awarded it to Wife. *See* Order of Court, dated January 22, 2013, at Paragraph 3. Husband agrees with this finding, but wants to insert a caveat that if Wife should ever sell her dental business or its equipment, then Wife should have to give him a percentage of the sale. *See* Husband's Concise Statement, at Paragraph 3.

However, 23 Pa.C.S.A. §3504 states that whenever a decree of divorce is entered, both parties whose marriage is terminated or affected shall have complete freedom of disposition as to their separate real and personal property and may sell their separate property, without the consent of the other party.

All parties agree that the dental practice has a *de minimis* value and Husband does not contest that it was awarded to Wife. The parties divorced on June 11, 2013. The effect of §3504 means that Husband cannot seek a commission on any of Wife's future transactions.

## D. Sanctions

Husband argues that the Court erred when it failed to grant Husband "the sanctions imposed by the Court." *See* Husband's Concise Statement, at Paragraph 24. Husband contends that the Court twice imposed sanctions on Wife, once by the Honorable Judge Kathleen Mulligan and once by this Court in the amount of $750. *Id.* The simple fact of the matter is that no such sanctions were ever imposed.

---

[9] Husband spoke briefly about the vacation to Egypt, but only insofar as the difficulties Wife caused Husband. *See* T.T., at 34-35. *See also* Footnote 4, *infra*.

Husband directs the Court's attention to an Order, dated February 14, 2011.[10] In its Order, the Court stated that Wife *may* be required to pay $750 if she did not comply with discovery. *See* Order of Court, dated February 11, 2010 (emphasis added). Husband seems to read that language as an award for sanctions.

For her part, Judge Mulligan did not impose sanctions either. The equitable distribution trial was held on December 7, 2012. On December 6, 2012, Wife brought before Judge Mulligan an Emergency Petition for Special Relief, seeking a postponement of the trial. In turn, Husband sought to sanction wife for the frivolous petition. *See* Husband's "Answers to Emergency Petition for Special Relief And, Motion to Dismiss," dated December 6, 2012. Judge Mulligan denied Wife's request to postpone. *See* Order of Court, dated December 6, 2012. Judge Mulligan also denied Husband's request for sanctions, stating verbatim: "12-6-12. See separate order. Sanctions to be considered by trial court." Husband apparently construes Judge Mulligan's order to mean that his sanctions request was granted, and that the only task before this Court was to determine the amount of the award. Here too, Husband is incorrect. This Court found that sanctions were not warranted.

## V. CONCLUSION

Equitable distribution trials do not turn on whether the litigants have sufficient animosity toward each other; they depend on clear admissible evidence of the value of assets and income. Despite this Court's instruction, guidance, and warning, the parties sought to convince the Court with testimony and evidence of the former, rather than the latter. To be clear, such a misstep does not invoke the condemnation of the Court so much as it impairs the parties' abilities to assist the Court with making the correct decision. Unhappy with the result, the parties appeal a myriad of matters. For the abovementioned reasons, with the exception of the unfortunate math error of $6,026, this Court's Order of January 22, 2013 should be affirmed.

---

[10] The Order Husband refers to is actually dated February 11, 2011. It was docketed on February 15, 2011. To complicate matters a bit further, the Order states that the day was February 11, 2010. That is clearly a mistake, because the original divorce complaint was not filed until May 2010, and discovery did not begin until October 2010.

21

Kathryn Nevin Drew , J.

22