565 A.2d 453

**Cora J. MALSEED, Appellant,**

v.

**Harold F. MALSEED.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1989.

Filed Oct. 23, 1989.

Michael F. X. Gillin, Media, for appellant.

Lyn Schoenfeld, Media, for appellee.

Before CIRILLO, President Judge, and BECK and TAMILIA, JJ.

TAMILIA, Judge:

Appellant wife appeals a July 11, 1988 Order which granted the parties a divorce and set forth equitable distribution and the special master's fee.

On February 2, 1983 wife filed a complaint seeking a divorce and equitable distribution, alimony pendente lite, counsel fees, and expenses. A special master was appointed, and after considering testimony, exhibits, pleadings, and other documents, he filed his recommendation and report on November 19, 1987. Wife filed exceptions to the report on November 30, 1987. By the July 11, 1988 Order in question, the trial court granted the divorce and made the following equitable distribution: the $49,000 in equity in the marital home to be distributed 60 percent to husband and 40 percent to wife, with husband to have the option of paying wife $19,600 in cash; the shares of Sunshine Mining Company and Penn Central to be retained by each party; and an approved special master's fee of $1,495 to be paid $747.50

by wife and $247.50 by husband. Wife filed this timely appeal.

The trial court summarized the facts as follows.

The parties in the above captioned matter were married on June 11, 1977 in Chester County, Pennsylvania and separated in October, 1982. Defendant Harold F. Malseed is forty-five years of age and was employed with the Haverford Township Police Department as a police officer from 1965 until April, 1978. After sustaining a back injury which rendered him permanently disabled, Defendant began receiving disability payments of $15,440.00 per year. Defendant also receives $10,244.00 per year from Workmen's Compensation. Plaintiff, age forty is currently earning $16,500.00 per year as a sales representative for PSFS and attends college part-time. No children were born of the marriage. Plaintiff has one prior marriage which produced no children and ended in divorce. Defendant also has one prior marriage and continues to contribute to the support of the two children, ages sixteen and twenty.

Slip Op., Endy, J., 7/11/88, p. 1.

■ On appeal wife first argues the court abused its discretion when it used the value of the marital property as of the date of separation because this valuation gives to husband a substantial windfall especially with regard to the marital residence.

Appellant urges the parties stipulated the property was worth $92,000 at the time of the hearing before the special master (March 18, 1985), and was encumbered by a mortgage in the amount of $26,000, so that the court should have accepted the figure of $66,000 as the net equity in the home, rather than accepting an appraisal of $85,500 for the time period of the separation (October 20, 1982) and subtracting the $36,362.95 principal amount of the mortgage as of December 31, 1984 to arrive at $49,000. In basing its calculations upon the latter formula, she argues the court provided husband with a windfall of approximately $15,000

by finding the net equity in the marital home to be $49,000 rather than $66,000.

We noted in *Lowry v. Lowry*, 375 Pa.Super. 382, 544 A.2d 972 (1988), that our scope of review in equitable distribution is limited, and we must apply the Divorce Code to the record to determine whether the hearing court abused its discretion. We added, "We will find an abuse of discretion only if the hearing court misapplied the law or failed to follow proper legal procedure." *Id.*, 375 Pa.Superior Ct. at 390, 544 A.2d at 976 (citations omitted).

In its recent decision in *Sutliff v. Sutliff*, 518 Pa. 378, 383, 543 A.2d 534, 537 (1988), our Supreme Court advised, "it would be impossible to construct a distribution scheme that would be fully responsive to [the present] needs and circumstances [of the parties] if the court were to act without taking cognizance of the current values of the assets being distributed." The Court reflected that given the factors to be considered under 23 P.S. § 401(d) upon equitable distribution, it is inconceivable that the legislature intended marital property to be valued at any other time than the time when the marital property is to be distributed. *Id.*, 518 Pa. at 381, 543 A.2d at 536. In view of this, we find the trial court erred in not basing the equitable distribution upon the market value of the marital home *at the time of distribution* (H.T. 3/18/85, pp. 13–14, 114). There is no question as to the value of the property available for distribution at that time as there is a stipulation of that value as being $92,000 (H.T. at 13–14, 114). Upon reargument, a majority of this panel construes the record to be in error on the determination of the amount of encumbrance to be subtracted upon distribution. We cannot ascertain the true amount of the encumbrance without remand as the court established the value of the encumbrance as of December 31, 1984, without considering a possible pay down until the date of hearing on March 18, 1985. Additionally, the court was in error in setting the value of the property as of October 20, 1982 rather than March 18, 1985, the nominal date of distribution, as required by *Sutliff, supra.*

■ Further, wife contests the valuation dates of two rental properties purchased by husband prior to the marriage and held in his name alone. The parties stipulated that at the time of the master's hearing, the total present market value of both properties amounted to $66,000 (H.T. at 27, 114). In this instance appellant would prefer the date of separation be used as the valuation date since the value was greater at that time. However, this valuation is meaningless without determination of the value at time of marriage since only the increase in value is marital property under section 401(e). Appellee's testimony indicates that at the time of marriage the appraised value of the properties was $60,000, although during the marriage, an offer was made to purchase this property at $70,000 which purchase failed because of an impediment in the title (H.T. at 115). We have no present value for the property other than the $66,000 stipulated to at the time of the hearing before the master. The $6,000 increase is marital property but the master determined the distribution of this property (including the $2,000 outstanding loan) should be entirely to the husband due to his disability. (Master's report at 22.) The trial court approved this finding. (Slip Op. at 4–5.) We find no error in these findings and distribution.[1]

■ Wife also contends the court erred in failing to consider husband's disability and retirement pensions in its calculation of marital property. The master in his findings of fact found that husband receives a taxable disability pension of $15,444 per year and which he will continue to receive until he is 55; at that time he will receive a pension of approximately $11,000 per year. Additionally, he receives workmen's compensation benefits in the amount of $10,224 per year, which is also taxable income to him. It is clear that husband's disability pension is not marital property under the decision in *Ciliberti v. Ciliberti*, 374 Pa.Super.

---

1. Although the trial court Opinion appears to confuse the marital residence with the duplexes, and does not actually discuss the distribution of the marital home except in the Order, the court's conclusions would be likewise applicable to the marital residence. *See* Slip Op. at 4.

228, 542 A.2d 580 (1988). That case also involved a disabled police officer and settled the question of whether police disability payments are marital property subject to equitable distribution between spouses. We said in *Ciliberti:*

> We decline to hold that true disability payments are marital property subject to equitable distribution. Such benefits are intended to compensate the employee spouse for lost earning capacity. They are paid in lieu of the earnings which would have been paid to the employee if he or she had been able to work. They replace the future salary or wages which the employee, because of physical or mental disability, will not be able to earn. They are comparable to Workmen's Compensation disability payments. Post-divorce payments intended to compensate for an inability to work are not marital property.
>
> Where it can be shown, however, that a portion of the employee spouse's disability pension is representative of retirement benefits, the amount received by the disabled employee in lieu of retirement benefits remains marital property subject to distribution.

*Id.,* 374 Pa.Superior Ct. at 233, 542 A.2d at 582.

Moreover, in *Ciliberti* we said, "it is now firmly established that retirement pension benefits, vested and non-vested, military and civilian, are deemed marital property subject to equitable distribution." *Id.,* 374 Pa.Superior Ct. at 231, 542 A.2d at 581.[2] The master recognized husband's retirement pension to be marital property but determined it should be solely distributed to husband. As noted by the trial court, plaintiff's share of the pension would amount to a very small percentage thereof because she was married to appellee for only 11 months of the 13 years he served on the police force. Slip Op. at 4. Additionally, both the master and trial court noted appellant's future financial outlook as being significantly better than appellee's. Slip

---

**2.** In *Mansell v. Mansell,* —— U.S. ——, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), the United States Supreme Court held that military disability pensions, even those elicited in lieu of standard military retirement pensions, are not marital property subject to equitable distribution. Thus to that extent *Ciliberti, supra,* is modified.

Op. at 3–4, master's report at 15, 16, 19. Under the facts, we do not perceive total distribution of the retirement fund to husband to be error, nor was it error for the court to refuse to find the disability payments to be marital property in view of the holding in *Ciliberti.*

Next, wife urges the court abused its discretion in awarding 60 percent of the marital assets to husband, and in not properly weighing under 23 P.S. § 401(d)(7) the support, care and comfort which she rendered to husband while he was temporarily disabled during the marriage, and the fact she had worked as a homemaker for a substantial amount of time at the behest of appellee who wished for her to remain at home in order that she could stay home, keep house, take care of him and conceive children. (Appellant's brief at 4.)

Husband counters that the 60–40 distribution in his favor is supported by substantial evidence of record including the fact he is permanently disabled by a back injury and is unable to work, leaving him with limited future economic prospects.

In the recent decision in *Verdile v. Verdile,* 370 Pa.Super. 475, 536 A.2d 1364 (1988), we stated:

An order determining equitable distribution will be reversed on appeal only for an abuse of discretion. An abuse of discretion is found only if there is insufficient evidence to support the trial court's determination. In determining whether a court has abused its discretion, we do not usurp the trial court's duty as fact finder.

*Id.,* 370 Pa.Superior Ct. at 482, 536 A.2d at 1368 (citations omitted).

An examination of the master's report shows the factors to be considered by the court upon equitable distribution were in fact reviewed. (*See* 23 P.S. § 401(d).) In his findings of fact, the master placed great weight on the employability and opportunity of each party to acquire future income, and found wife's economic prospects to be much more promising than those of her disabled husband.

He acknowledged wife had first left her job in 1978 to assist husband at home who was injured and to act as a full-time homemaker; she later left a different job in 1980 to remain as a full-time homemaker. As to 23 P.S. § 401(d)(7),[3] the master implicitly found husband's contributions to the acquisition, preservation, and appreciation of the marital property to outweigh the wife's contributions as a homemaker. The master found the parties purchased the marital residence at Edith Lane for $72,000, giving a mortgage for $40,000; approximately $36,000 which was put into the property was derived from the sale of husband's property at Annabelle Lane. Husband realized net proceeds of $49,000 from the sale of his Annabelle Lane property and used the difference between that figure and monies put into the Edith Lane property to pay joint bills. Further, the master found since the parties' separation husband has been paying all of the expenses associated with the home at Edith Lane including mortgage principal, interest, insurance, taxes, maintenance and the like. Master's report at 10. In light of the record, we find no error in the weight accorded by the court to wife's homemaking activities. As we stated in *Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928, 934 (1986), "[s]ince the record fails to reflect an abuse of discretion on the part of the trial court, its decision must stand with respect to the weight accorded the factors of § 401(d)." *See also Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987).

■ In a related argument wife urges the court abused its discretion when it failed to consider her contributions to the maintenance of the home, including her payments toward household expenses and the mortgage, and the fact husband has had exclusive rent-free possession of the premises since separation of the parties. Husband argues equi-

3. That subsection provides the court should evaluate as a factor in equitably distributing the property:
   (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker.

ty, under the circumstances, requires wife receive only the economic benefits from the home which accrued prior to the time at which she left because the entire down payment for the home was derived from his separate funds, the home was placed in both names only to avoid harassment by his first wife, and from the time of separation on, wife took no responsibility for the home, financial or otherwise. The master found husband paid all of the expenses associated with the marital home since separation, including mortgage, insurance, taxes and maintenance. We find no error on the part of the trial court in refusing to award wife a greater portion of the marital residence or to take into account husband's exclusive possession of the residence in consideration of its conclusions the contributions of husband which went into the marital residence outweighed those of wife, and wife has better economic prospects than her husband.

In the main, the equitable distribution schedule is fair under the circumstances in this case and we perceive no abuse of discretion. We, therefore, affirm the Order of distribution except as to the time at which the determination of value of the marital home was made and as to the amount of the encumbrance on that home. As to that value, pursuant to *Sutliff, supra,* the court will be required to take additional testimony as to the encumbrance on the marital home *at the date of distribution* (March 18, 1985), thereby establishing the amount available for distribution, by fixing the home's market value ($92,000, as stipulated) less the encumbrance existing as of that date. Once that amount is determined, the distribution rate of 60 percent to husband and 40 percent to the wife shall be applied in its distribution.

The case is remanded for further hearing and order in conformity with this Opinion.

Jurisdiction relinquished.

BECK, J., concurs in the result.